Howard **BEALE**, **Jr.**, **et al.**, **Plaintiffs-Appellants**,

v.

Winston **BLOUNT**, **Postmaster**, **United States Post Office**, **et al.**, **Defendants-Appellees**.

No. 71–1800.

United States Court of Appeals,
Fifth Circuit.

June 14, 1972.

Jon D. Caminez, Legal Services of Greater Miami, Inc., for plaintiffs-appellants.

Vincent K. Antel, Asst. U. S. Atty., Miami, Fla., John N. Mitchell, U. S. Atty. Gen., Thomas J. Press, Atty., Dept. of Justice, Washington, D. C., Robert W. Rust, U. S. Atty., Miami, Fla., for defendants-appellees.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Charging that his November 6, 1970 discharge from his position as a substitute letter carrier at the Buena Vista Station branch of the Miami, Florida, Post Office occurred solely because he was black, Howard Beale, Jr., brought suit [1] in the district court for injunctive

1. As a class action on behalf of "black citizens in or about the Miami area who have been discriminated against by the defendants with respect to employment solely on account of race or color".

relief, monetary damages[2] and reinstatement with back pay. Named as defendants were Winston Blount, the Postmaster-General of the United States; T. J. Coleman, the Regional Director of the Post Office Department; and E. M. Dunlap, the postmaster for Miami, Florida. Citing Waters v. Wisconsin Steel Works of International Harvester Company, 7 Cir. 1970, 427 F.2d 476, and Beverly v. Lone Star Lead Construction Corporation, 5 Cir. 1971, 437 F.2d 1136, the court below dismissed the complaint on the ground that available administrative remedies had not been exhausted. On this appeal Beale contends that the doctrine requiring exhaustion of available administrative remedies is inapplicable to a suit alleging the termination of federal employment solely for racial reasons. For reasons which differ somewhat from the one given by the district court, we affirm the order of dismissal.

## I. THE FACTS

Beale filed his complaint in the district court while postal authorities[3] were administratively reviewing the appropriateness of his termination. In order to put the facts in perspective, we outline separately the chronologies of the administrative and judicial proceedings.

### A. *The Administrative Proceeding*

On November 11, 1968, Beale was hired as a substitute letter carrier at the Buena Vista Station. Beale argued with his immediate supervisor, Braz, on June 22, 1970, over Beale's alleged failure to pay proper attention to his work inside the station. Four days later, on June 26, 1970, Beale and Braz once again exchanged angry words and Beale was alleged to have picked up a stool and made a menacing gesture toward Braz stating "I'll kill the son of a bitch". In addition, Beale allegedly told Braz "just quit f___ing with me". Braz reported both incidents to his superiors and on August 14, 1970, Postal Inspectors Hawkins and Anderson advised Beale in writing that disciplinary action was about to be taken against him for his conduct on June 26, 1970.

Beale replied to the charge of misconduct by a letter to defendant Dunlap, dated September 4, 1970, stating that he had been provoked by Braz into his intemperate behavior on June 26, 1970. He did not deny picking up the stool, or the use of abusive language. On October 23, 1970, defendant Coleman advised Beale in writing that the charge of misconduct had been sustained and that he would be terminated from the postal service as of November 6, 1970. The scheduled termination was automatically postponed by Beale's appeal to F. J. Nunlist, the Assistant Postmaster-General for Operations, and request for a formal hearing. A hearing was held at Miami, Florida, on December 10, 1970, before Hearing Officer Lindler. At the hearing Beale was represented by Tony Montanez, an official of the postal employees union to which he belonged. On December 23, 1970, the hearing officer submitted his report of the December 10

2. The claim for monetary damages was dropped by Beale during the pendency of this suit below. The damages claim may have been abandoned prematurely in view of the October 15, 1971 decision of the United States Court of Claims in Chambers v. United States, 1971, 451 F.2d 1045, holding that Order 11478, 34 F.R. 12985 (1969) and Title 5, U.S.C., Section 7151, conferred jurisdiction on the Court of Claims under the Tucker Act, Title 28, U.S.C., Section 1346(a) (2), to entertain a suit for back pay by an *applicant* for federal employment who allegedly was denied employment solely for racial reasons.

3. On August 12, 1970, Public Law 91–375, 84 Stat. 720, the Postal Re-Organization Act of 1970 was approved. This act abolished the Post Office Department and created in its stead the United States Postal Service, "an independent establishment of the executive branch of the Government of the United States". The United States Postal Service officially came into existence on July 1, 1971, at which time it assumed all the functions previously performed by the Post Office Department.

proceeding. The report related that at the hearing Beale had limited his evidence to matters in extenuation, with primary emphasis upon his claim that Braz had provoked him on June 26, 1970.

By letter to Beale dated March 16, 1971, Assistant Postmaster-General Nunlist noted that Beale's representative at the hearing of December 10, 1970, had made several references to alleged racial motivations behind the decision to terminate Beale. Nunlist's letter expressly invited Beale to file a formal claim of racial discrimination with the postal authorities.[4] On March 25, 1971, Beale's suit-counsel advised Nunlist in writing that Beale did not "wish to file any administrative charges of racial discrimination since a lawsuit is pending in federal court involving this claim of racial discrimination".

On April 8, 1971, Nunlist advised Beale that he had decided to sustain the decision to terminate him from the postal service. The termination was effective as of April 23, 1971. The Board of Appeals and Review, on August 25, 1971, sustained the decision of the Assistant Postmaster-General to terminate Beale's employment.[5] That Board was the final administrative review authority within the postal establishment.

B. *The Judicial Proceeding*

Beale's complaint was filed in the district court on January 12, 1971. It alleged that Beale was "a member of a class composed of black citizens in or about the Miami area who have been discriminated against by the defendants with respect to employment solely on account of race or color". It continued that the defendants "have pursued and continue to pursue a pattern or practice and custom or usage of racial discrimina-

tion which has deprived and tended to deprive the plaintiffs and members of their class of the same right to make and enforce contracts, and the same right to enjoy property as it is enjoyed by white persons". According to the complaint, the defendants had implemented their racially discriminatory policies in numerous ways, among them being: (1) by "subjecting black employees to harsher discipline than white employees"; and (2) by "failing and refusing to take such affirmative steps as may be necessary to correct the effects of their past racially discriminatory practices". Alleging district court jurisdiction pursuant to Title 42, U.S.C., Sections 1981–1988, Title 28, U.S.C., Section 1343, and Title 28, U.S.C., Section 1331, the complaint sought injunctive relief against the named defendants and their subordinates prohibiting continuance of racially discriminatory practices against the class represented by Beale, seeking damages in excess of $10,000.00 to the members of that class, and reinstating Beale with back pay. Trial by jury was demanded under Rule 38, F.R.Civ.P. One additional discharged black postal employee moved for leave to intervene. If the trial judge acted on that motion before the dismissal, we do not find his order in that respect in the record before us.

On April 8, 1971, the defendants moved to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief could be granted or, in the alternative, for summary judgment. The defendants' motion was granted, with prejudice, on April 28, 1971. Beale filed his notice of appeal April 30, 1971. On September 3, 1971, he advised this Court that the Board of Appeals and Review had on August 25 sustained the decision to terminate his employment.

4. As noted in the text, infra, Beale's suit in the court below had then been pending over two months, since January 12, 1971.

5. As noted in the text infra, the lawsuit was dismissed with prejudice by the

court below four months earlier, on April 28, 1971. Notice of this appeal was filed April 30, 1971.

## II. THE CLAIM FOR INJUNCTIVE RELIEF

Although the district court did deal in terms with the complaint's request for injunctive relief against the defendants' allegedly racially discriminatory practices, we are of the opinion that such relief is barred by the doctrine of sovereign immunity. This holding is compelled under our decision in Blaze v. Moon, 5 Cir. 1971, 440 F.2d 1348.

*Blaze,* supra, was a suit by a former temporary employee of the United States Army Corps of Engineers. The complaint named the Corps and its Houston, Texas, District Engineer as defendants and charged that the Corps engaged in the practice of hiring blacks for temporary jobs only, reserving its permanent positions for white applicants. The district court granted the defendants' motion to dismiss for lack of jurisdiction by reason of sovereign immunity, 1970, 315 F.Supp. 495. We affirmed the dismissal of the complaint, citing Judge (now Mr. Justice) Blackmun's opinion for the Eighth Circuit in Gnotta v. United States, 1969, 415 F.2d 1271, cert. denied 1970, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115.

Conceding the undetermined possibility that various branches of the former United States Post Office did indeed practice racial discrimination with respect to department employees, the district court was without power to consider such a request for relief in the absence of a specific grant of jurisdiction from Congress to afford antidiscrimination injunctive relief.[6]

## III. THE CLAIM FOR REINSTATEMENT

Traditionally, the procedural avenue to reinstatement for an ex-employee of the federal government claiming to be the victim of improper discharge has been a petition for mandatory injunction or writ of mandamus directed to the head of the agency concerned commanding the re-employment of the petitioner. Schwartz and Jacoby, Litigation with the Federal Government (1970), Chapter XVI. The exhaustion of available administrative remedies was a prerequisite to maintenance of such a mandamus action. Bolger v. Marshall, 1951, 90 U.S.App.D.C. 30, 193 F.2d 37. See, also, Chandler v. Judicial Council of Tenth Circuit of United States, 1970, 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100. The remedy of mandamus directed against an agency has been regarded as an exception to the doctrine that suits may not be maintained against the United States without its consent. Clackamas County, Oregon v. McKay, 1954, 94 U.S.App.D.C. 108, 219 F.2d 479, vacated as moot 1955, 349 U.S. 909, 75 S.Ct. 599, 99 L.Ed. 1244. In 1962, Congress broadened the availability of the mandamus remedy by investing the district courts generally with jurisdiction to issue the writ which eliminated the previous requirement that reinstatement suits be maintained only in the United States District Court for the District of Columbia. Public Law 87–748, 76 Stat. 744 (October 5, 1962), codified as Title 28, U.S.C., Section 1361. The legislative history of that act clearly reflects that Congress did not intend to modify the requirement of exhaustion of available

---

6. Section 401(1), Title 39, United States Code, empowers the United States Postal Service "to sue and be sued in its official name". The United States Supreme Court has held that a "sue and be sued" clause constitutes a waiver of sovereign immunity. Keifer & Keifer v. Reconstruction Finance Corporation, 1939, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784; Federal Housing Administration v. Burr, 1940, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed.

724. Because Beale was terminated from his employment before the United States Postal Service officially came into existence and because when Beale filed his suit in the district court his employer was the United States Post Office Department, we deem it unnecessary to consider the impact of Title 39, U.S.C., Section 401(1) upon Beale's claim for injunctive relief.

administrative remedies in mandamus suits. 1962 U.S.Code Congressional and Administrative News, pp. 2784, 2787.

For purposes of this appeal the complaint's request for Beale's reinstatement with back pay will be considered as an action in the nature of a petition for writ of mandamus. This bypasses the obstacle of the doctrine of sovereign immunity, so that we get directly to the issue of exhaustion of available administrative remedies. The issue of exhaustion, as we find it here, raises two separate questions:

(a) Does the allegation of racial discrimination on the part of a federal agency excuse a discharged employee from the requirement that he exhaust available administrative remedies before bringing suit to compel his reinstatement?

(b) Assuming that exhaustion of available administrative remedies is required where racial discrimination is alleged to have been the motivation behind the decision to terminate employment, has Beale satisfied that requirement in this case?

## IV. THE REQUIREMENT OF EXHAUSTION OF AVAILABLE ADMINISTRATIVE REMEDIES WITH RESPECT TO FEDERAL EMPLOYMENT

In support of the contention that he is not required to exhaust available administrative remedies before bringing suit in a federal court charging a federal agency with racial discimination in employment, Beale advances two theories: It is first asserted that the district court's jurisdiction is not limited to that established by Title 28, U.S.C., Section 1361 (mandamus), but extends to the jurisdiction provided by Title 28, U.S.C., Sections 1331 and 1343.[7] The second contention is that the decisions of the United States Supreme Court in Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492; McNeese v. Board of Education, 1963, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622; and Damico v. California, 1967, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647, dealing with the requirement of exhaustion of *state* administrative remedies in actions brought pursuant to Title 42, U.S.C., Section 1983,[8] have application here.

We find neither theory to be meritorious. Our reasons are simple and uninvolved.

Sections 1331 and 1343, Title 28, United States Code, may not be construed to constitute waivers of the federal government's defense of sovereign immunity. Cotter Corporation v. Seaborg, 10 Cir. 1966, 370 F.2d 686, 692. Beale's complaint thus alleges no proper jurisdictional basis for seeking reinstatement.

7. Title 28, U.S.C., § 1331:
"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."
Title 28, U.S.C., § 1343:
"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: . . . (3) [t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; (4) [t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

8. Title 42, U.S.C., § 1983:
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

■ The Supreme Court's decisions regarding the supplementary nature of relief under Title 42, U.S.C., Section 1983, are inapplicable to this case, in which Beale alleges a deprivation of rights protected by Title 42, U.S.C., Section 1981.[9] The Section 1983 cases on which Beale heavily relies dealt with the relationships between the several states and the federal government in the field of deprivations of federally protected rights under the color of state law. The Supreme Court found no rational basis for requiring a claimant to exhaust state administrative remedies before being permitted to institute an action in federal court to redress the deprivation of a federal right. But Beale's situation is totally dissimilar from that of a plaintiff in a Section 1983 action. Beale was formerly an employee of a department of the government of the United States. The federal government is on record by Act of Congress as opposed to discrimination on the basis of race in its own employment practices. Title 5, U.S.C., Section 7151.[10] Pursuant to Section 7151, the President has directed the heads of all federal agencies to put into effect positive programs designed to eliminate racial discrimination in federal employment and to resolve complaints of unequal treatment on the basis of race within the governmental establishment. Executive Order 11246 (1965), as amended by Executive Order 11478 (1969).

[6] Beale does not assert that resort to the administrative processes of the postal service designed to deal with complaints of racial discrimination would be a meaningless ritual. He claims simply that he did not need to present his claim of racial discrimination to the postal authorities before bringing suit in district court. We adhere to the time-tested requirement that available administrative remedies be exhausted prior to the institution of a mandamus action. The federal bureaucracy's efforts to police its own practices with respect to discrimination in employment on the basis of race should not be undermined. This would be the predictable effect of sanctioning resort to the federal courts before completion of the administrative review process. We hold that the teachings of *Monroe, McNeese* and *Damico* and similar decisions have no application to this case.[11]

## V. THE EXHAUSTION OF AVAILABLE ADMINISTRATIVE REMEDIES IN THIS CASE

Beale claims that a white employee of the Miami, Florida, Post Office would not have been fired for engaging in the conduct with which he was charged, the use of foul language towards and an assault upon a superior. It is asserted that the punishment for a similar offense by a white employee would at most have been three days' suspension. Throughout the administrative review

---

9. Title 42, U.S.C., § 1981:
   "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

10. Title 5, U.S.C., § 7151:
   "It is the policy of the United States to insure equal employment opportunities for employees without discrimination because of race, color, religion, sex, or national origin. The President shall use his existing authority to carry out this policy."

11. Our ruling in this regard should not be construed as implying that a plaintiff in a § 1983 action would be required to exhaust the available state administrative remedies before bringing his federal lawsuit in the event the State is able to establish the efficacy of those remedies. The Supreme Court's decisions in *Monroe, McNeese* and *Damico* make it clear that such exhaustion is not required of a § 1983 plaintiff no matter what state administrative avenues for relief are open to him.

of the decision to take disciplinary action against Beale for his behavior on June 26, 1970, he and his counsel persistently refused to present the issue of racial discrimination to the postal authorities. When he was invited by the Assistant Postmaster-General to make such a claim, Beale declined to do so on the basis that the issue was then pending before a federal court. Beale's sole defense to the charges in the administrative proceedings apparently was his assertion that Braz provoked his actions.

■■ Under these circumstances we reject Beale's alternative claim that available administrative remedies are now exhausted by the adverse decision of the Board of Appeals and Review during the progress of this appeal. We think rather that the doctrine of exhaustion of available administrative remedies requires a federal court plaintiff to establish that all claims which could have been entertained by the administrative agency involved were in fact presented to that agency for resolution. See, Unemployment Compensation Commission of Territory of Alaska v. Aragan, 1946, 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136. See also, Picard v. Connor, 1971, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438, requiring in a state prisoner's federal habeas corpus action that full opportunity for state court review of federal constitutional claims must be sought before relief is available in a federal district court.

Beale deliberately refused to permit the postal authorities to consider his claim that he had received the excessive punishment of dismissal solely because of his race. Instead, he withheld that claim in order to raise it in the first instance in a federal court. Such a strategy, it appears to us, is calculated to disrupt the operation of the postal service's internal program aimed at the elimination of racial discrimination in employment. We are constrained to hold that Beale's refusal to raise the racial discrimination issue during the course of the administrative review of the decision to terminate his postal employment is tantamount to a deliberate bypass of available administrative remedies. Exhaustion of those remedies has not taken place.

## VI. CONCLUSION

We recapitulate. Beale's claim for injunctive relief is barred by the doctrine of sovereign immunity; he is required to exhaust his available administrative remedies before seeking reinstatement in federal court, even where the alleged basis for the separation from federal employment is racial discrimination; and Beale, by refusing to raise the issue of racial discrimination in the course of the administrative review of the decision to terminate him, did not exhaust his available administrative remedies. The district court properly refused to entertain Beale's suit. Its judgment is

Affirmed.