490 F.2d 700
 6 Fair Empl.Prac.Cas. 1109, 6 Empl. Prac.
Dec. P 9041,
8 Empl. Prac. Dec. P 9487
Willie PENN, Individually, Etc., et al., Plaintiffs-Appellees,
v.
James R. SCHLESINGER, Individually and as Secretary of
Defense, Etc., et al., Defendants-Appellants.
 No. 72-3684.
 United States Court of Appeals, Fifth Circuit.
 Dec. 18, 1973, Rehearing En Banc Granted March 15, 1974.
 
 Ira DeMent, U.S. Atty., Kenneth E. Vines, Asst. U.S. Atty., Montgomery, Ala., Morton Hollander, David Anderson, Walter H. Fleischer, James C. Hair, Jr., Civ. Div., Dept. of Justice, Washington, D.C., for defendants-appellants.
 Morris S. Dees, Jr., Southern Poverty Law Center, Joseph J. Levin, Jr., Montgomery, Ala., Orzell Billingsley, Jr., Birmingham, Ala., J. L. Chestnut, Jr., Selma, Ala., for plaintiffs-appellees.
 Before TUTTLE, GODBOLD and MORGAN, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 This interlocutory appeal pursuant to 28 U.S.C.A. 1292(b)[1] raises three questions: (1) Whether racial discrimination in hiring and promotion by federal agencies is actionable by discriminatees; (2) Whether such claims of discrimination are barred by sovereign immunity; and (3) Whether these plaintiffs exhausted available administrative remedies before filing suit in federal court.
 
 
 2
 Plaintiffs-appellees Willie Penn, Charles Foster, and the Alabama State Conference of the NAACP, on behalf of themselves, the organization's membership, and 'all blacks in Alabama similarly situated' brought this action against the United States and the individuals heading seventeen federal agencies employing persons in Alabama.[2] Plaintiffs Penn and Foster, both civilian employees of the Department of Defense at Maxwell Air Force Base in Alabama allege they have been denied promotions or advancement solely because of their race. The district court held that the plaintiffs had stated a claim upon which relief could be granted, that sovereign immunity barred relief against the United States but not against the individual government officials, and that the plaintiffs had sufficiently exhausted their administrative remedies before filing this suit. The court, while permitting discovery to proceed, allowed the defendants to make an interlocutory appeal on the controlling questions of law involved in the suit. We affirm.
 
 
 3
 I. CAUSE OF ACTION.
 
 
 4
 Assuming for purposes of this interlocutory appeal that the plaintiffs have defined a proper class under Rule 23 and that they were discriminated against by some seventeen federal agencies having offices in Alabama,[3] the question remains whether the plaintiffs have stated a claim upon which relief can be granted.
 
 
 5
 The parties are agreed that Title VII of the Civil Rights Act of 1964 is inapposite.[4] First, the plaintiffs claim that Executive Order No. 11478, as amended by Executive Order No. 11590,[5] creates a cause of action by discriminatees against the federal government. Second, plaintiffs allege that 42 U.S.C. 1981[6] enables them to sue the federal government for infringement of their right to make and enforce employment contracts on equal grounds with white citizens. Third, they contend that the Fifth Amendment of the United States Constitution creates a direct cause of action by discriminatees against the federal government.[7]
 
 
 6
 Since, as will subsequently appear, we hold the opinion that the complaint states a claim upon which relief can be granted under Section 1981, we pretermit the questions whether this claim might also be cognizable under either the Executive Order or the Fifth Amendment.[8]
 
 
 7
 Our decision in Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (1970), held that Section 1981 provided a cause of action to a black employee allegedly discharged solely because of her race. Thus, this Section creates a cause of action for employment contract discrimination against private employers. Though no decision directly in point has been brought to our attention, we think it clear that the rationale of the Dobbs House decision applies to employment discrimination by federal officials as well as by private employers.
 
 
 8
 In District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 605, 34 L.Ed.2d 613 (1973), the Supreme Court said that Section 1982[9] is 'an 'absolute' bar to all such discrimination, private as well as public, federal as well as state.' 409 U.S. at 422, 93 S.Ct. at 605. The Court held that Section 1982 was intended to prohibit particular types of discrimination regardless of their sources. In this respect, Section 1982 was contrasted with Section 1983. While the former was enacted to implement the principles enunciated in the Thirteenth Amendment, the latter legislation, enacted eleven years later, was based upon the Fourteenth Amendment. While Section 1982 prohibited discriminatory activity from whatever source, Section 1983 was directed only at discriminatory activities of the states.
 
 
 9
 The narrow question in this case is whether Section 1981 is more closely analogous to Section 1982 or to Section 1983. In our view, there is no doubt but that Section 1981, like its sister Section 1982, provides a cause of action against all discrimination against blacks, because of race or color, in the making and enforcement of contracts. Therefore, the allegation that the federal government has violated the plaintiffs' contract rights on account of their race does state a cause of action under Section 1981 of the Civil Rights Act of 1866. Hence, we turn to the question whether sovereign immunity bars recovery against the federal government and its employees when an action is brought under Section 1981.
 
 
 10
 II. SOVEREIGN IMMUNITY.
 
 
 11
 In the first place, we agree with the district court's analysis that Section 1981 does not constitute a waiver of sovereign immunity by the federal government. It is well settled that a waiver of sovereign immunity must be specific and explicit; such a waiver cannot be implied by construction of an ambiguous statute. See United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940); Barefield v. Byrd, 320 F.2d 455 (5th Cir. 1963), cert. denied, 376 U.S. 928, 84 S.Ct. 675, 11 L.Ed.2d 624 (1964). Since Section 1981 contains no explicit waiver of sovereign immunity by the federal government but merely a general prohibition of discrimination on racial grounds, it does not constitute a waiver of this immunity. Any doubt concerning disposition of this issue was put to rest in our decision of Beale v. Blount, 461 F.2d 1133 (5th Cir. 1972), which held a Section 1981 suit for injunctive relief against the federal government to be barred by the doctrine of sovereign immunity.
 
 
 12
 While the plaintiffs concede and the district court held that Beale v. Blount bars this suit as against the government itself, the plaintiffs present two arguments which they contend circumvent the sovereign immunity bar with respect to the individual federal officials. First, they argue that the Fifth Circuit cases of Beale v. Blount and Blaze v. Moon, 440 F.2d 1348 (5th Cir. 1971) constituted improper extensions of the Eighth Circuit case of Gnotta v. United States, 315 F.2d 1271 (8th Cir. 1969), cert. denied, 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970). While it is true that Gnotta involved review of an administrative finding that no discrimination had been proven while Blaze and Beale were cases in which discrimination had been admitted, we are bound by precedent in this circuit to accept the extension of Gnotta to cases of admitted discrimination. Second, the plaintiffs contend that Blaze and Beale must be read in light of two Supreme Court decisions which recognize certain exceptions to the doctrine of sovereign immunity in suits against federal officials. Larson v. Domestic and Foreign Commerce Corporation, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949) and Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). Chief Justice Vinson stated these exceptions to sovereign immunity as follows:
 
 
 13
 'There may be, of course, suits for specific relief against officers of the sovereign which are not suits against the sovereign . . . (First,) where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are ultra vires his authority and therefore may be made the object of specific relief . . . a second type of case is that in which the statute or order conferring power upon the officer to take action in the sovereign's name is claimed to be unconstitutional . . . here, too, the conduct against which specific relief is sought is beyond the officer's powers and is, therefore, not the conduct of the sovereign.' 337 U.S. 689-690, 69 S.Ct. 1461, 1462.
 
 
 14
 In our opinion, a violation of Section 1981 by a federal official must be deemed an ultra vires action on the official's part. Since this federal statute specifically prohibits racial discrimination in the making and enforcement of employment contracts, we cannot infer that federal officials responsible for making employment contract decisions are acting within the scope of their duties on behalf of the sovereign when they act in a racially discriminatory manner.
 
 
 15
 However, since Beale v. Blount held further that injunctive relief against allegedly racially discriminatory practices by individual federal officials in the Post Office Department was barred by the doctrine of sovereign immunity, we must examine in greater detail the relief requested by the plaintiffs in order to ascertain what relief would, if granted, run against the sovereign rather than merely against an officer of the sovereign acting ultra vires.
 
 
 16
 The plaintiffs did not seek to enjoin these officials from violating Section 1981. However they did seek 'a declaration that the defendants have engaged in a practice of denial of equal right to contract with blacks in Alabama in employment and that such practice is a violation of Title 42 U.S.C. 1981.' Further, they requested that defendants institute a practice of hiring one black for every one white hired until the ratio of blacks in defendants' federal jobs in Alabama is approximately in proporation to the percentage of blacks in Alabama's population.
 
 
 17
 With respect to the individual named plaintiffs, Willie Penn sought to require that his rating be increased to G.S. 11 and that he be promoted into the next available position in base procurement for which he is qualified; a further order was sought requiring the Department of Defense to pay him a sum of money, including interest, to represent the salary Penn would have received had he been promoted without regard to race. Plaintiff Foster requested an order requiring the Department of Defense of increase his rating to no less than G.S. 5 and promotion into the next available position in procurement or elsewhere for which he is qualified, an order requiring back pay for wages he would have earned had he been promoted without regard to race, and an award of damages for humiliation and embarrassment suffered as a result of racially discriminatory practices.[10]
 
 
 18
 In Beale v. Blount, this court drew a distinction between a claim for injunctive relief and a claim for reinstatement, holding the former barred by the doctrine of sovereign immunity. The latter, being in the nature of a mandamus action, by-passed this obstacle. 461 F.2d at 1137-1138. A declaratory judgment, if equivalent to a claim for injunctive relief would be similarly barred by the doctrine of sovereign immunity. Under other circumstances, it might be more analogous to a mandamus action. On this interlocutory appeal, with no declaratory order before us, we cannot of course prejudge which classification might be appropriate.
 
 
 19
 The remainder of the relief requested, save the claims for back wages and for damages, both of which would impinge upon the Treasury, are in the nature of mandamus actions. Thus, upon remand, it is within the power of the court (1) to order promotion of the plaintiffs if appropriate and (2) to institute affirmative remedies on behalf of the class if such remedies are necessary to overcome ultra vires discrimination by the individual defendants.
 
 
 20
 III. EXHAUSTION OF REMEDIES.
 
 
 21
 Since sovereign immunity does not present a bar to all the relief requested by plaintiffs, we must now turn to the question of whether the plaintiffs sufficiently exhausted available administrative remedies before filing this suit.
 
 
 22
 Before petitioning to the district court, Penn had repeatedly made known his desire for advancement to his white supervisor. This supervisor failed to inform Penn of his right to file a complaint with an Equal Employment Opportunity Officer. Therefore, Penn did not enter into the latter stages of the Equal Employment Opportunity Commission and Civil Service Commission processes for handling racial discrimination grievances. Plaintiff Foster had likewise complained about his lack of advancement to his white supervisors. One of these, who was also an Equal Employment Opportunity Counselor, had discouraged Foster from prosecuting his complaints administratively. This supervisor had advised him 'that he would have to file a suit if he expected to carry his complaint further.' We must decide whether these actions taken by Penn and Foster, in light of the responses they received from their supervisors, constituted exhaustion of their administrative remedies.
 
 
 23
 It has been decided by this Court that one seeking relief in the federal courts from actions taken by federal administrative agencies must first exhaust the administrative remedies available to him.[11] However, as the Supreme Court pointed out in McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), exhaustion of administrative remedies is not a matter of black letter law. The Court there said:
 
 
 24
 'The (exhaustion) doctrine is applied in a number of different situations and is, like most judicial doctrines, subject to numerous exceptions. Application of the doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved.' Id. at 193, 89 S.Ct. at 1662.
 
 
 25
 In 1971, when Penn and Foster filed this suit,[12] the scheme for filing complaints was set out in 5 C.F.R. Part 713. Under Section 713.213(a), an aggrieved employee first had to approach a designated EEO Counselor within his agency or branch. This counselor, who was authorized to attempt to settle the grievance informally, was required to advise the employee of his right to file a more formal complaint with the EEO Officer should the informal attempt fail. The filing of a formal complaint under Section 713.214 triggered an investigation by the agency's Director of Equal Employment Opportunity (5 C.F.R. 713.216). After completion of this investigation and review of the investigative file by the complainant, the agency was required to further provide another opportunity for informal resolution of the complaint. 5 C.F.R. 713.217(a). If this, too, was unsuccessful, the complainant had to be notified in writing of the agency's proposed disposition of the complaint and advised of his right to a full evidentiary hearing before an impartial appeals examiner (5 C.F.R. 713.217(b)). If a hearing was held, 5 C.F.R. 713.218, the appeals examiner was required to make findings and analyses of 'the matter which gave rise to the complaint and the general environment out of which the complaint arose' and render a recommended decision on the merits of the complaint, 'including remedial action, where appropriate.' 5 C.F.R. 713.218(g).
 
 
 26
 The agency head or his delegate then received these findings and recommended decision, and made a decision for the agency on the information in the complaint file. 5 C.F.R. 713.221(a). If the agency head either rejected or modified the recommended decision, the reasons for that action had to be set forth. 5 C.F.R. 713.221(b)(2). At this point, the agency head could require 'any remedial action authorized by law determined to be necessary or desirable to resolve the issues of discrimination and to promote the policy of equal opportunity.' 5 C.F.R. 713.221(c). This decision had to be transmitted in writing to the complainant, together with copies of the hearing record and the appeals examiner's findings and recommended decision, and it had to inform him of his right to appeal to the Civil Service Commission. 5 C.F.R. 713.221(b) and (d).
 
 
 27
 After review by the Civil Service Commission, all the possible administrative remedies which the plaintiffs might have pursued would have been terminated. There is no question but that at this point, suit in federal court alleging that discrimination had occurred and no remedy had been afforded would have been proper.
 
 
 28
 If the plaintiffs had deliberately by-passed their administrative remedies, this suit would clearly be inappropriate. In Beale v. Blount, supra., the plaintiffs had been invited by postal authorities to file a formal claim of racial discrimination. Beale failed to do so and argued that presentation of this claim was unnecessary. This court held to the contrary, dismissed the suit for failure to exhaust administrative remedies, and declared:
 
 
 29
 'We adhere to the time-tested requirement that available administrative remedies be exhausted prior to the institution of a mandamus action. The federal bureaucracy's efforts to police its own practices with respect to discrimination in employment on the basis of race should not be undermined. This would be the predictable effect of sanctioning resort to the federal courts before completion of the administrative review process.' 461 F.2d at 1139.
 
 
 30
 This suit, however, is substantially different from that of Beale v. Blount. Here, rather than deliberately by-passing their administrative remedies, the plaintiffs approached the administrative officials charged at the first level with responsibility for processing these complaints. The question before us is whether the plaintiffs need have done more before filing suit in federal court.
 
 
 31
 The defendants contend that further exhaustion would allow the Civil Service Commission to exercise its authority to rectify discriminatory employment practices. They argue further that requiring no more exhaustion than was present here would hamper the achievement of uniformity in the resolution of complaints of discrimination. Finally, they contend that allowing the suit constitutes an uneconomical use of judicial time.
 
 
 32
 There is little merit to these arguments. First, it was the fault of the agency officials, not the plaintiffs, that the Civil Service Commission was given no opportunity to pass upon the complaints. Second, no disuniformity is created by a rule which says that exhaustion is completed at the point where agency personnel refused to further process grievance and pass them on to the next link in the chain of command. Third, judicial time is not needlessly wasted for our interpretation of the exhaustion requirement here should help insure that, in the future, federal agencies process such complaints in accordance with their own procedures rather than short-circuiting them into federal court.
 
 
 33
 For the reasons stated above, the order of the district court granting the United States' motion to dismiss and denying the individual defendants' motion to dismiss is affirmed and the case remanded for further proceedings not inconsistent with this opinion.
 
 
 34
 ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC
 
 
 35
 Before BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY, and GEE, Circuit Judges.
 
 BY THE COURT:
 
 36
 A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc.
 
 
 37
 It is ordered that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.
 
 
 38
 LEWIS R. MORGAN, Circuit Judge (specially concurring):
 
 
 39
 Although I agree fully with the reasoning and results of the majority opinion in this case, a few words about the issue of exhaustion may be helpful. Judge Tuttle correctly states that in light of our conclusion that the plaintiffs exhausted all available administrative remedies, it is unnecessary to decide whether exhaustion was required. Nevertheless, it seems clear from existing precedent that in an action under the Civil Rights Act of 1866, 42 U.S.C. 1981 et seq., exhaustion of administrative remedies is not required.
 
 
 40
 The question may have remained open after McNeese v. Board of Ed., 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), since the court held there that resort to the state administrative remedies may well have been futile. How ever, the more recent decision of Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967), seems to have settled the question, at least for the time being. Both of these decisions related to the failure to exhaust state administrative remedies, while in this case we have a question of resort to federal administrative remedies. However, the policies behind the requirement of exhaustion of state administrative remedies are even stronger than those requiring exhaustion of federal administrative remedies, because of comity considerations. Thus, if state exhaustion is not required, a fortiori, exhaustion of federal remedies should not be required.
 
 
 41
 It is true that McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), while holding that a failure to exhaust remedies within the Selective Service System did not preclude raising certain defenses in a criminal prosecution for failure to report for induction, included strong language in support of the exhaustion requirement. However, that case cannot possibly be held to have overruled Damico. Therefore, although the wisdom of this exception to the exhaustion requirement has been questioned,[1] we are apparently left with a flat exemption to the requirement of exhaustion in civil rights cases. But see, Eisen v. Eastman, 421 F.2d 560 (2 Cir. 1969).
 
 
 42
 Although this circuit has followed this rule in some cases, Caldwell v. National Brewing Company, 443 F.2d 1044 (5 Cir. 1971), it has not always done so. Beale v. Blount, 461 F.2d 1133 (5 Cir. 1972). It is this unfortunate inconsistency which creates confusion among the judiciary and the bar. Although this was not the case in which to do so, we should take the earliest opportunity to rationalize and make consistent this confusing area of the law.
 
 GODBOLD, Circuit Judge (dissenting):
 
 43
 This is not run of the mill litigation but potentially a massive case. In my view the allegations of plaintiffs concerning their reasons for failing to utilize their administrative remedies are not a sufficient basis for transferring this inquiry out of the carefully structured grievance system provided by the United States government and into the federal courtroom.
 
 
 44
 The suit is a class action directed at the employment practices of 17 agencies of the United States operating in the State of Alabama. Named as defendants were the United States and the individual heading each agency (and his successor), including 10 cabinet officers of the United States government plus a substantial array of other government officials. The agencies, the individual defendants, and the number of Alabama employees of each agency are:
 
 
 45
 Department of Defense and Melvin R. Laird: 16,348 employees Treasury Department and John B. Connally: 689 employees Department of Justice and Richard Kleindienst: 264 employees Department of the Interior and Rogers C. B. Morton: 170 employees Department of Agriculture and Earl Butz: 1200 employees Department of Commerce and Maurice Stans: 128 employees Department of Labor and James D. Hodgson: 5 employees Department of Health, Education and Welfare and Elliot L. Richardson: 2,161 employees Department of Housing and Urban Development and George Romney: 182 employees Department of Transportation and John A. Volpe: 414 employees U.S. Postal Service and Elmer T. Klassen: 901 rural mail carriers, 167 Fourth Class postmasters and 7,329 employees General Services Administration and Robert L. Kunzig: 46 employees General Accounting Office and Elmer B. Staats: 12 employees NASA and Dr. James C. Fletcher: 5,454 employees Railroad Retirement Board and Howard W. Habermayer: 10 employees Small Business Administration and Thomas S. Kleppe: 37 employees Selective Service System and Dr. Curtis W. Tarr: 17 employees
 
 
 46
 Only the individual government officers remain in the case as defendants, since the United States was ordered dismissed on the ground of sovereign immunity and no cross-appeal was taken from that order. The case was certified to us for interlocutory appeal under 28 U.S.C. 1292(b). The District Court has not ruled on the class action feature, but if plaintiffs are permitted to represent the class they have staked out they will be entitled to pervasively investigate and litigate the employment practices of a wide spectrum of agencies with thousands of employees.
 
 
 47
 In addition to alleging a prima facie statistical case of discrimination, the complaint states that the listed agencies have engaged in a broad range of discriminatory practices, including the following: failure to recruit blacks; use of nonvalidated employment and advancement tests; oral selection interviews; employment of persons without employment tests and without adequate guidelines to insure nondiscriminatory hiring or with adequate guidelines that are arbitrarily disregarded; arbitrary selection of white persons over equally qualified blacks; promotions of less qualified whites or whites with less seniority than blacks; discrimination and denial of the right to equal contract in employment based solely on race.
 
 
 48
 The judicial remedies sought are farreaching: (1) a declaration that defendants have (a) systematically and unconstitutionally discriminated against blacks in employment on racial grounds, (b) violated Executive Order 11478 relating to equal employment opportunity in the federal government, and (c) denied to blacks the right to contract regarding their employment; (2) an order in the nature of mandamus compelling defendants to perform their duties under Executive Order 11478; (3) establishment of a one-to-one hiring ratio in the 17 named agencies in Alabama until the percentage of black employees is approximately the percentage of blacks in Alabama's population; and (4) promotions and back pay for the individual plaintiffs.
 
 
 49
 The narrow fulcrum employed to lever this plenary inquiry out of institutional channels and into the federal court system consists of vague and unverified allegations by two individuals employed by a single federal agency (and at one location) concerning informal remarks alleged to have been made to them by two (or three) other government employees designated as EEO 'counselors' or 'officers.' Seldom was so small a camel's nose employed to drag so large a camel into the tent.
 
 
 50
 In the original complaint the plaintiffs were the NAACP and Penn. Penn charged that he had been employed as a GS-1 and after 20 years had been promoted to only GS-5, when in fact his experience, ability, training, seniority and job knowledge entitled him to a rating of GS-10 or 11, and that failure of his white superiors to promote him was based solely upon his race. As to exhaustion, Penn originally alleged only this:
 
 
 51
 Mr. Penn let his supervisor know that he was desirous of receiving a promotion to any better paying (job) or to one that carried more responsibility. Mr. Penn put his superiors on notice of his desire of advancement.
 
 
 52
 The government filed a motion to dismiss asserting failure to exhaust, and by an amended complaint this language was added regarding Penn:
 
 
 53
 The supervisor to whom Plaintiff Penn made complaints and made known his desire to fill any better paying or more responsible position was Ruth Hunter . . .. In addition to Mrs. Hunter's position as head of Procurement, she is also the alternate Chief Counselor for Equal Employment Opportunity at MAFB. Mrs. Hunter never informed Plaintiff Penn of his right to file a complaint with an E.E.O. officer. Under 5 CFR 713.213(a) it was Mrs. Hunter's legal duty to advise Plaintiff of his right to file such complaints.
 
 
 54
 The amended complaint also added Foster as a plaintiff and class representative. He alleged various unsuccessful efforts to seek better employment at Maxwell Air Force Base, and then as to exhaustion alleged:
 
 
 55
 Plaintiff Foster then called a Mr. Glenn, Chief Counselor for Equal Employment Opportunity at MAFB. Glenn referred Mr. Foster to A. C. Carter, Equal Employment Opportunity Officer, a white man. Plaintiff had a meeting with Mr. Carter in which he asked Carter to check the eligibility roster (promotion register) to determine where his (Foster's) name was in relation to the two ladies who had been promoted. Carter would not give Foster that information, and during the course of the conversation indicated to Mr. Foster that he would have to file a suit if he expected to carry his complaint further. Carter and Glenn did not inform Foster of any other remedies available to him.
 
 
 56
 In its order on motion to dismiss the District Court noted the basic principle that available administrative remedies must be exhausted before a court will decide a constitutional question, and referred to Beale v. Blount, 461 F.2d 1133 (CA 5, 1973), in which this court affirmed the dismissal of a discharged federal employee's complaint for failure to exhaust. The court, however, distinguished Beale on the ground that the plaintiff therein made no attempt to exhaust his administrative remedies and did not allege that resort to administrative processes would be a meaningless ritual, but merely claimed that he did not need to present his claim administratively before bringing suit, while the instant plaintiffs alleged that they had attempted to exhaust 'only to be thwarted in the initial stages of those proceedings by federal officials charged with the duty of hearing complaints of racial discrimination and informing plaintiffs of additional channels of appeal.' Characterizing their actions as 'abortive attempts to exhaust' and accepting all allegations as true, the District Court concluded that Penn's and Foster's failure to go farther in the administrative processes was solely due to the breaches of duty expressly imposed on other governmental employees (presumably Mrs. Hunter and Glenn, EEO counselors, and Carter, and EEO officer).
 
 
 57
 The amended allegations as to Penn charged no more than that Mrs. Hunter failed to inform him of his right to file a complaint. The allegations as to Foster are twofold-- that Glenn and Carter failed to inform him of his right to file a complaint and that Carter 'indicated' to him that he would have to file suit if he expected to go farther.
 
 
 58
 The exhaustion requirement is fully discussed in McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), which points out that 'application of the doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved.' Id. at 193, 89 S.Ct. at 1662, 23 L.Ed.2d at 203. McKart refers to these purposes, among others: (1) avoiding premature interruption of the administrative process, in recognition that it is desirable that the agency develop a record and have the opportunity to exercise its discretion and apply its expertise; (2) recognizing that the exhaustion doctrine is an 'expression of executive and administrative autonomy' and that the courts should not interfere with the agency until it has completed its action or exceeded its jurisdiction; (3) practical notions of judicial efficiency, since the complaining party may vindicate his rights administratively and the courts may never have to intervene; (4) permitting an administrative agency to discover and correct its own errors; (5) avoiding the flouting of the administrative process that can weaken the agency's effectiveness by encouraging people to ignore its procedures.
 
 
 59
 When one scrutinizes the specific administrative system here involved in the light of the foregoing policies, as McKart instructs judges to do, it becomes apparent that the issue of the possibly discriminatory hiring practices of these numerous agencies in an entire state cries out for nonjudicial handling.
 
 
 60
 Pursuant to the sweeping mandate of Executive Order 11478,[1] the Civil Service Commission promulgated comprehensive regulations that are particularly well calculated to ensure ready reception and prompt, fair disposition of discrimination claims.
 
 
 61
 Under the procedural provisions of the regulations,[2] an agency must first seek to resolve a charge of discrimination promptly through consultation between the aggrieved person and an Equal Employment Opportunity counselor. 5 C.F.R. 713.213. If this is unsuccessful, the aggrieved person may file a formal complaint, id. 713.214, which triggers an investigation by the agency's Director of Equal Employment Opportunity, id. 713.216. Upon the completion of this investigative file, the agency must provide another opportunity for informal resolution of the complaint, id. 713.217(a).
 
 
 62
 If attempts at informal resolution fail again, the complainant must be notified in writing of the agency's proposed disposition of the complaint and advised of his right to a full evidentiary hearing before an impartial appeals examiner, id. 713.217(b). If a hearing is held, see id. 713.218, an appeals examiner must thereafter make findings and analyses of 'the matter which gave rise to the complaint and the general environment out of which the complaint arose' and render a recommended decision on the merits of the complaint, 'including remedial action, where appropriate, with regard to the matter . . . and general environment out of which the complaint arose.' Id. 713.218(g). These findings and recommended decision must be transmitted to the agency head or his designee, who then makes the decision of the agency on the information in the complaint file. Id. 713.221(a). If the agency either rejects or modifies the recommended decision, as opposed to adopting it, the reasons for that rejection or modification must be set forth. Id. 713.221(b) (2). The agency 'shall require any remedial action authorized by law determined to be necessary or desirable to resolve the issues of discrimination and to promote the policy of equal opportunity.' Id. 713.221(c). The agency decision must be transmitted in writing to the complainant, together with copies of the hearing record and the appeals examiner's findings and recommended decision, and the decision must also inform the complainant of his right to appeal to the Civil Service Commission. Id. 713.221(b) and (d).
 
 
 63
 Upon an appeal to the Commission, the 1971 regulations provide for a review by the Board of Appeals and Review, without a hearing, of the complaint file and all relevant written representations made to the Board. Id. 713.234. The Board, which may remand a complaint to the agency for further investigation or rehearing, must issue a written decision setting forth the reasons for its conclusions. Id. 713.234. Copies of the Board's decision must be sent to the complainant, his representative, and the agency, and when corrective action is ordered, the agency 'shall report promptly to the board that the corrective action has been taken.' Id. 713.234. The Board's decision is final, but the Commissioners, upon request, may reopen the decision for consideration of new and material evidence, if the decision involves an erroneous interpretation of law or regulation or a misapplication of established policy, or if the decision is of an exceptional nature. Id. 713.235.[3]
 
 
 64
 In my view the McKart policies are disserved by permitting these plaintiffs to skip all the administrative procedural steps that begin with the filing of a written complaint. In the beginning it is to be noted that plaintiffs do not claim that the administrative system is insufficient, see NLRB v. Shipbuilding Local 22, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968), or that resort to it will be futile. Ogletree v. McNamara, 449 F.2d 93 (CA 6, 1971). There has been no opportunity for a record to be developed at the agency level. The agency appeal bodies and the Civil Service Commission, which handles these matters nationwide, will have no opportunity to exercise discretion and expertise.
 
 
 65
 Moreover, the agency is denied the benefit of the policy that it be permitted to discover and correct its own errors. The majority refers to this consideration but declines to give it weight on the ground that it was the fault of the agency and not plaintiffs that the agency had no opportunity to pass on plaintiffs' complaints. But the policy favoring self correction applies at least as forcefully to procedural slipups as to erroneous agency decisions on the merits of discrimination claims.
 
 
 66
 The majority opinion, as I read it, intimates that excusing plaintiffs from exhausting is appropriate as a means of penalizing or rebuking erring administrators and impelling them to do better next time.[4] With deference, it seems to me that this misconceives the policies undergirding exhaustion. The sound reason for lowering the barrier is not to teach the agency a lesson but to ensure that when a complaining employee faces a genuinely futile administrative effort, he will be allowed directly into court.
 
 
 67
 This brings us to the question of the waste of judicial tools which this case entails. When the District Court ruled, the plaintiffs' right to an administrative remedy was still viable, and it remains viable at this time. See 5 C.F.R. 713.213(a). Under the 1972 Regulations, now in effect, the complaint must be acted upon by the agency within 180 days from filing. We are now, more than a year after the District Judge denied the motion to dismiss, and pursuant to an appeal certified to us by the District Judge, striving at the appellate level to reach decision on the threshold question of whether plaintiffs should be in federal court at all. Although the majority says they should, all may still be in vain, since at this juncture there has been no determination whether in the informal conferences the supervisory personnel at Maxwell Air Force Base actually said, or failed to say, what plaintiffs allege. Additionally, of course, the judicial time and manpower already expended will be but the tip of an iceberg once the broad investigation which the majority would permit actually occurs.[5]
 
 
 68
 To this point I have addressed myself to broad policies that relate to the requirement of exhaustion. There are other and more narrow reasons why plaintiffs should not be excused from exhausting. The material in the complaint bearing on plaintiffs' informal contacts with Maxwell personnel designated as EEO officials was added by amendment after exhaustion surfaced as an issue and in an effort to allege frustration. But neither plaintiff has alleged that he lacked actual knowledge of his right to file a formal administrative complaint, or that his failure to proceed further in administrative channels was in fact caused by the remarks made to him. I can find nothing in the amended complaint to support the District Court's conclusion that plaintiffs' failure to go farther was solely due to the misbehavior of others. Rather, the pleadings do not exclude the possibility that plaintiffs knew of the procedures available to them and determined to repair to the court as an advised choice.[6]
 
 
 69
 These are not mere niceties of pleading. The Supreme Court has accepted as desirable ends the establishment and utilization of institutional remedies, as has this court. See, e.g., Stevenson v. Board of Education of Wheeler County, 426 F.2d 1154 (CA 5), cert. denied, 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970); Lucas v. Chapman, 430 F.2d 945 (CA 5, 1970); Ferguson v. Thomas, 430 F.2d 852 (CA 5, 1970); Wood v. Alamo Heights Indep. School Dist., 433 F.2d 355 (CA 5, 1970). If in fact Penn and Foster were not thrown off the track by the allegedly incomplete or inaccurate information given them, or if they learned of the correct procedure before reaching the doors of the courthouse, the policies undergirding exhaustion require that they must exhaust.
 
 
 70
 I am not unmindful that the complaint may adequately allege failure on the part of Maxwell Air Force Base EEO designees to comply with their duties. Counselors, for example, whom aggrieved employees must consult before taking any other step, are charged with the affirmative duty of providing written notice of the right to file a formal complaint. See 5 C.F.R. 713.213(a). Nevertheless, I believe the review procedures set up by the Civil Service Commission regulations are objectively so comprehensive and so fair that McKart requires us to find the failures here alleged insufficient to justify permitting these plaintiffs to circumvent them. The same factors which, when applied as McKart sets out, command that exhaustion be required also mandate that the courts not permit departure from the requisite exhaustion on anything less than very strong grounds.
 
 
 71
 In this case there is an additional factor not present in McKart. The District Court held that the complaint states claims against the individual government officers under Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), and Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). We cannot know whether under the prayer for other and general relief all members of the class will seek back pay. But it seems to me that the mere exposure of individual government officers to the possibility of personal back pay liability is manifestly unfair. Under the administrative procedure there is no problem of sovereign immunity, and back pay awards, if any, can be assessed against the government.
 
 
 
 [1]
 'When a district judge, . . . shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order . . .'
 
 
 [2]
 The agency heads being sued are the Secretaries of the Departments of Defense, Treasury, Interior, Agriculture, Commerce, Labor, Health, Education and Welfare, Housing and Urban Development, Transportation, The Attorney General, The Postmaster General, The Directors of the General Services Administration and The Selective Service System, The Comptroller General, and The Chairman of the Railroad Retirement Board and The National Aeronautics and Space Administration
 
 
 [3]
 Neither of these questions has yet been litigated
 
 
 [4]
 Though Title VII proscribes unlawful employment practices including racially discriminatory hiring and promotion, the federal government is not included within the definition of 'employer' under the Act. 42 U.S.C. 2000e(b)
 
 
 [5]
 This order, in relevant part, reads:
 'Section 1. It is the policy of the government of the United States to provide equal opportunity in federal employment for all persons, to prohibit discrimination in employment because of race, color, religion, sex, or national origin, and to promote the full realization of equal employment opportunity through a continuing affirmative program in each executive department and agency . . . 'Section 2. The head of each executive department and agency shall establish and maintain an affirmative program of equal employment opportunity for all civilian employees and applicants for employment within his jurisdiction in accordance with the policy set forth in Section 1. It is the responsibility of each department and agency head, to the maximum extent possible, to provide sufficient resources to administer such a program in a positive and effective manner . . . 'Section 3. The Civil Service Commission shall provide leadership and guidance to departments and agencies in the conduct of equal employment opportunity programs . . . 'Section 4. The Civil Service Commission shall provide for the prompt, fair, and impartial consideration of all complaints of discrimination in federal employment on the basis of race, color, religion, sex, or national origin. Agency systems shall provide access to counselling for employees who feel aggrieved and shall encourage the resolution of employee problems on an informal basis. Procedures for the consideration of complaints shall include at least one impartial review within the executive department or agency and shall provide for appeal to the Civil Service Commission . . .'
 
 
 [6]
 'All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.'
 
 
 [7]
 The due process clause of the Fifth Amendment restricts the federal government in some areas which would be covered by the equal protection clause of the Fourteenth Amendment if applied to a state. See, e.g. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954) (holding racial segregation violates due process)
 
 
 [8]
 Another Executive Order, which we held did not create such a cause of action, is similar to, albeit distinguishable from, Executive Order No. 11478, See Farkus v. Texas Instruments, Inc., 375 F.2d 629 (5th Cir. 1967)
 Though the constitutional claim of racially discriminatory employment practices appears to be closely analogous to the claim of the plaintiffs in Bolling v. Sharpe, supra, the existence of a statutory cause of action under Section 1981 renders it unnecessary for us to decide whether such private actions as this one are necessary to insure compliance with the due process clause by the federal government. See Bivens v. Six Unknown Named Agents, 403 U.S. 388 at 398, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (concurring opinion by Mr. Justice Harlan.)
 
 
 [9]
 Like Section 1981, Section 1982 was part of the Civil Rights Act of 1866, enacted pursuant to Congress's power under the Thirteenth Amendment
 
 
 [10]
 Plaintiff Penn's motion for a preliminary injunction against the director of the Procurement Section to prevent her from 'intimidating, harassing and threatening plaintiff Willie Penn or any class plaintiff as a result of plaintiff Penn filing his law suit' has not been pressed upon this appeal. We therefore decline to discuss this remedy further
 
 
 [11]
 In Beale v. Blount, supra, the Court drew a distinction between federal court actions against federal officials and federal court action against a state agency or official. This distinction, having been drawn, is binding on us. We cannot accept appellant's argument, therefore, that we equate the present suit with one in which a Section 1981 plaintiff may deliberately by-pass administrative remedies under Title VII of the Civil Rights Act. See Caldwell v. National Brewing Company, 443 F.2d 1044 (5th Cir. 1971)
 
 
 [12]
 The 1972 Amendments to the Economic Opportunity Act are irrelevant to disposition of the claims herein
 
 
 [1]
 K. Davis, Administrative Laws Treatise, 1970 Supp., 20.01
 
 
 [1]
 The Order, which was buttressed by the Equal Opportunity Act of 1972, Pub.L. 92-261, 86 Stat. 111, 42 U.S.C. 2000e-16 (1970), declares that the policy of equal opportunity is to be promoted 'through a continuing affirmative program in each executive department and agency' and 'must be an integral part of every aspect of personnel policy and practice in the employment, development, advancement, and treatment, of civilian employees in the Federal Government.' The order provides that 'the head of each executive department and agency shall establish and maintain an affirmative program of equal employment opportunity for all civilian employees and applicants for employment within his jurisdiction * * *.' In this regard, the order specifies that the responsibilities of executive department and agency heads include, e.g., provision of sufficient resources to administer the program 'in a positive and effective manner', recruitment which reaches 'all sources of job candidates', full utilization of the present skills of each employee, provision of 'the maximum feasible opportunity to employees to enhance (their) skills so they may perform at their highest potential and advance in accordance with their abilities', and provision of training and advice to supervisors to assure their understanding and implementation of this equal employment opportunity policy. The order directs that the Civil Service Commission shall, e.g., provide leadership and guidance to departments and agencies in the conduct of equal employment opportunity programs, review and evaluate agency program operations periodically, and issue such regulations, orders and instructions as it deems necessary and appropriate to carry out the Executive Order. And with respect to complaints alleging discrimination, the order directs that:
 'The Civil Service Commission shall provide for the prompt, fair, and impartial consideration of all complaints of discrimination in Federal employment on the basis of race, color, religion, sex, or national origin. Agency systems shall provide access to counseling for employees who feel aggrieved and shall encourage the resolution of employee problems on an informal basis. Procedures for the consideration of complaints shall include at least one impartial review within the executive department or agency and shall provide for appeal to the Civil Service Commission.'
 The Civil Service Commission has promulgated Equal Opportunity Regulations which implement all of the directives of Executive Order 11478, as amended (5 C.F.R. Part 713 (1972 rev.)). These regulations specify in detail the procedures which each department or agency shall follow in processing and resolving individual complaints of discrimination.
 
 
 [2]
 The regulations in force at the inception of this suit were promulgated in 1971, and were superceded in 1972. Note 3, infra, discusses certain of the changes made by the 1972 version
 
 
 [3]
 In October 1972, a few days after the District Court had entered its order, the Equal Opportunity Regulations were revised by the Civil Service Commission (see 37 Fed.Reg. 22717, October 21, 1972). As a result of this revision, the regulations now additionally require that an agency resolve a complaint within 180 calendar days after it is filed, including the time spent in conducting an evidentiary hearing. 5 C.F.R. 713.220. The regulations now specify the relief which an agency must offer employees and applicants for employment against whom the agency is found to have discriminated, including, for example, retroactive promotion with back pay and retroactive appointment to the position previously denied with back pay. Id. 713.271
 The earlier regulations permitted an organization acting in an aggrieved person's behalf to file and prosecute his claim but not to raise general allegations of discrimination unrelated to the individual complaint. The amended regulations broaden this right, providing for filing with an agency of 'general allegations by organizations or other third parties of discrimination in personnel matters within the agency which are unrelated to an individual complaint.' Id. 713.251. Any such allegation shall be stated with sufficient specificity so that the agency may conduct an investigation, and the agency 'shall notify the party submitting the allegation of its decision, including any corrective action taken on the general allegations.' The third party may appeal the agency decision to the Commission, which 'shall issue a decision on the allegation ordering such corrective action, with or without back pay, as it deems appropriate.' Id.
 
 
 [4]
 The majority refers to agency personnel's 'refusing to further process grievances and pass them on to the next link in the chain of command.' This seems to me a somewhat exaggerated characterization of what plaintiffs contend. (The relevant portions of the complaint are quoted in the early part of this opinion
 
 
 [5]
 The facts and the statistics of the current strains on judicial capacities need not be reiterated here. See e.g., Remarks of Warren E. Burger, Chief Justice of the United States, to the American Bar Association, August 6, 1973
 
 
 [6]
 Where alleged frustration of administrative remedy is based on lack of information or misinformation concerning the correct procedural route to follow, it is at least questionable whether failure to exhaust should be excused if before suit is filed the complaining party is advised by counsel of the correct procedural route to follow administratively