**Jesse DOUGLAS et al., Plaintiffs,**

v.

**Robert E. HAMPTON et al., Defendants.**

**Civ. A. No. 313–71.**

United States District Court,
District of Columbia.

Feb. 17, 1972.

Jules M. Perlberg, Alexander C. Allison, Chicago, Ill., David S. Tatel, Richard G. Clemens, Washington, D. C., for plaintiffs.

Mary E. Folliard, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM OPINION

JOHN LEWIS SMITH, Jr., District Judge.

Plaintiffs bring this action to enjoin further use, by the United States Civil Service Commission, of the Federal Service Entrance Examination (FSEE) as the primary means of entry into managerial and professional positions in the federal service alleging that it is discriminatory. Plaintiffs had also sought to enjoin use of scores on the Graduate Record Examination (GRE) as an alternative to the FSEE program, but since use of the GRE scores was discontinued by the Commission on July 17, 1971, that issue is no longer relevant. This matter is before the Court on plaintiffs' motion for a preliminary injunction and defendants' motion for remand of this matter to the Civil Service Commission.

Named plaintiffs are eight black college graduates hired by the Department of Housing and Urban Development (HUD) under its Urban Intern Program, each of whom subsequently took the FSEE for permanent positions. Four of the plaintiffs attained eligible scores for grade GS–5 positions and are currently working for HUD, two were terminated for failure to obtain eligible scores, one failed to attain an eligible FSEE score but qualified through another examination and is currently working for HUD, and one resigned his position.

Defendants are members of the Civil Service Commission, the Director of the Bureau of Recruiting and Examining of the Commission, and the Secretary of HUD.

Plaintiffs bring this action for themselves and on behalf of all past, present, and future federal employees and applicants for such employment who are prevented by the FSEE, solely due to their racial and cultural background, from attaining positions commensurate with their capabilities. They allege that use of the FSEE to qualify and rate applicants violates their rights to equal employment opportunities, disproportionately disadvantages minority applicants, and that the FSEE has not been shown to be related to successful job performance.

### Motion for Preliminary Injunction

Congress has vested wide discretion in the President to govern the federal civil service. 5 U.S.C. § 3301. The Commission, by statute, has the responsibility of aiding the President in directing and administering the civil service. 5 U.S.C. § 1301. It also has the duty to control, supervise, and preserve the

records of examinations for the competitive service and to prescribe regulations. 5 U.S.C. § 1302. The FSEE was developed by the Commission and first utilized in 1955 as the means of entry into federal service for persons with a college education or equivalent experience. It is estimated that during fiscal year 1972 the FSEE will be administered to approximately 150,000 applicants who will be competing for some 10,000 positions in over 200 occupational areas in most of the federal agencies.

Although plaintiffs contend that the rate at which white competitors attain eligible FSEE scores is greatly in excess of the rate for black competitors, the Commission does not statistically record the performance of FSEE competitors according to race, nor have plaintiffs offered any such statistics. In those occupations, however, where the FSEE is generally used as the entry requirement, blacks comprise approximately 18 percent of employees in occupations in which most employees enter at grade GS–5 and approximately 12 percent of employees in those in which most enter at grade GS–7. Although these percentages appear to be substantially higher than the percentage of blacks among all persons eligible, by college education, to take the FSEE, there is no evidence available which would show the proportion of employees in those occupations who entered through the FSEE program. Those percentages, therefore, do not bear a conclusive relationship to the FSEE pass rate of blacks and whites.

A comparison of statistics of pass rates at certain colleges with predominantly black enrollment with colleges having predominantly white enrollment indicates that FSEE competitors who have attended the predominantly black institutions attain eligible scores at substantially lower rates than competitors who have attended colleges with predominantly white enrollment. However, there is no evidence of whether competitors had taken the examination one or more times, the race of those competitors, whether there was a comparison of the predominantly black and the predominantly white schools to determine if the difference in pass rates was due to the colleges or the FSEE content, or whether the competitor-graduates of those schools constituted a representative sampling of the members of the respective races who took the FSEE. Those pass rates have not, therefore, been shown to bear a conclusive relationship to the FSEE pass rates of blacks and whites.

The FSEE measures the ability to use and understand written language and the ability to understand, interpret, and use data presented in quantitative terms. Those abilities are necessary so that applicants are able to learn a variety of tasks in successively higher levels within the occupation and thereby progress from entry level to full journeyman competence, or beyond, in a reasonable period of time. Proposed FSEE draft questions are routinely pretested by administering them to employee or applicant samples before they are included in the examination.

The decisions as to the abilities to be tested by the FSEE are based on intensive job analyses which identify the requirements of the occupations to be filled. Those analyses, conducted by trained occupational specialists, are integral parts of comprehensive studies of each occupation filled through the FSEE. The occupational studies are used to develop and revise guides for determining pay grade levels in a particular occupation (classification standards) and guides for determining the knowledge, skills, and abilities required for performance at the several grade levels in that occupation (qualification standards).

During a job analysis, occupational specialists interview management officials, supervisors, and employees at various grade levels of the occupation, personnel specialists, professional and technical societies, unions and other organized groups, and representatives of industry, the academic community, and state and local governments to gather

facts concerning the work of an occupation, the knowledge, skills, and abilities required to do that work at various levels, at what levels employees possessing those abilities can be found, relationship of the work to other occupations, and what attributes especially make for successful performance at the various levels and show potential for promotion.

Before an occupation is designated as one to be filled through the FSEE, the occupational specialists must determine that the entry level position requires experience or education equivalent in level to professional training, that no one specific subject matter background can or should be required, that the full performance level in the occupation is usually at least grade GS–11, and that trainees must demonstrate ability to successfully perform at entry level and through full performance level.

Validation is a term used by psychologists to describe the method utilized to demonstrate that an examination measures what it is supposed to measure. The Commission uses a rational method of validation based in large part on the job analyses described above. Plaintiffs contend that such a method of validation cannot be used to establish that the FSEE is job-related. The Commission has considered other methods of validation and has determined that the rational method is most accurate and particularly suited to its needs. Further, the defendants have demonstrated that the FSEE measures verbal and quantitative abilities and that those abilities are necessary for learning the duties and successfully reaching full performance levels within those occupational fields for which it is used. Therefore, the FSEE is rationally valid, i. e., significantly and rationally related to successful job performance. There is no merit to plaintiffs' contention that the rational validation method is unsound and that the relationship between job performance and the FSEE can only be, as a matter of law, established by an empirical, statistical study referred to as a criterion-related validation method.

In addition to asking that further use of FSEE scores for the purposes of determining eligibility for federal employment be enjoined, plaintiffs move the Court to restrain the termination of any federal employee as a consequence of failure to pass the FSEE, and to order immediate reinstatement of the named plaintiffs who were terminated because they were unable to pass the FSEE or the GRE.

There is presently no alternative to the FSEE available to the Commission by which to qualify and rank applicants for positions in the occupations where it is the general entry requirement. Alternatives such as subject matter examinations or personal interviews to determine education and work experience are not feasible methods by which to rank the approximately 150,000 applicants who will seek the approximately 10,000 vacancies which will occur during fiscal year 1972 alone. If the Commission were enjoined from utilizing the FSEE thousands of applicants would go unexamined and thousands of positions could be unfilled during the indeterminate period required to develop an alternative. Further, all of those persons, regardless of race, who attained eligible FSEE scores and are awaiting appointment to positions would suffer severe injury if the use of the FSEE as a selction device were enjoined.

Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), held that Title VII of the Civil Rights Act of 1964 required the elimination of any preemployment testing device that operates to exclude minorities, regardless of lack of discriminatory intent, where such device cannot be shown to be related to job performance. Although the Federal government is exempted from the provisions of the Act, the language of the Court in *Griggs* is helpful here. In that case it had been shown that the employment test did operate to disproportionately discriminate against minorities and it is only where such a *prima facie* showing of discrimination has been made that *Griggs* pro-

hibits the practice unless it is shown to be a reasonable measure of job performance.

■ On consideration of this record as a whole, there has been no conclusive showing that blacks are disproportionately disadvantaged in entering federal service by the FSEE. Further, although not required by *Griggs*, defendants have demonstrated that the FSEE is a reasonable measure of job performance in those occupations where it is generally used as the entry requirement. Plaintiffs have not, therefore, demonstrated that they have a substantial likelihood of success on the merits.

■ It appears to the Court that plaintiffs have not shown that the class they purport to represent is being irreparably injured by use of the FSEE. To enjoin its further use or the termination of those not attaining eligible scores, or ordering reinstatement of those so terminated, would adversely affect the overriding public interest in the efficient and uninterrupted operations of government. Therefore, the preliminary injunction should not issue.

### Motion for Remand

Defendants have moved to remand this matter to the Commission for hearings and decision in conformity with regulations which became effective after the initiation of this lawsuit.

■ The Court, although not required by plaintiffs' failure to exhaust later-created administrative remedies, has discretion, in the interest of sound judicial administration, to remand where the agency has general jurisdiction of, and a particular expertise in, the issues presented. Davis v. Washington, Civil Action No. 1086–70, April 26, 1971 (D. D.C.), does not suggest otherwise. The tests and procedures at issue in that case were used by the Metropolitan Police Department and the Commission did not have jurisdiction over all of the issues. As Judge Gesell stated:

The Civil Service Commission has offered its expert services which plaintiffs unfortunately flatly reject. The Court cannot force the parties to utilize the Commission, although this would clearly be in the public interest, since the Commission has no statutory jurisdiction which would bring the doctrine of administrative remedy into play. (Memorandum Opinion).

Since its inception the Commission's Board of Appeals and Review, as the highest authority for hearing and deciding employee appeals, has developed considerable expertise in standards of job performance. Congress mandated the President to insure, through the use of his existing statutory authority, that racial discrimination not be a consideration in federal employment opportunity. 5 U.S.C. § 7151. The President has designated the Commission as the agency having jurisdiction over racial discrimination complaints in the civil service and authority to issue final administrative decisions on such complaints against federal agencies has been delegated to the Board.

The recently promulgated regulations, which became effective on August 13, 1971 (36 F.R. 15446), expressly implement the policy that competitive employment practices fairly test the relative capacity and fitness of candidates for positions to be filled, result in selection from among the best qualified, be developed and used without discrimination, racial or otherwise, and insure appeal and review. Final appeal under those regulations is to the Board. Those regulations were issued by the Commission under its broad authority to oversee the federal service. It is, therefore, clear that the Commission has jurisdiction over, and a specialized proficiency in, all of the issues presented in this case.

■ It appears that before bringing this suit the representative plaintiffs did exhaust all then-available administrative remedies, which did not include hearings to determine whether the FSEE did discriminate against them because of their racial and cultural backgrounds. Because of the importance of this matter to the Commission's dis-

charge of its mandated responsibilities that agency should have the opportunity to apply its expertise to determine whether the FSEE does disproportionately discriminate against minority competitors and whether it is sufficiently related to job performance.

Plaintiffs' contention that remand is not appropriate because the Commission is a party is without merit. Remand may be ordered where the Commission not only is a party and has vigorously defended the issues being litigated, but has refused to entertain the matter when it was first brought before it. See Holden v. Finch, 446 F.2d 1311 (D. C.Cir. 1971). Plaintiffs also advance the contention that the Commission has prejudged every important issue and that further proceedings before it under the new regulations would be futile. There has, however, been no showing that the Commission will act other than in accordance with law in developing the factual foundation upon which its decision should be based.

Because of the complex factual determinations which will have to be made in this case, the particular expertise and statutory jurisdiction of the Commission as to the issues involved, and in the interest of judicial economy, the Court will exercise its discretion and remand this matter to the Civil Service Commission for appropriate proceedings pursuant to the recently promulgated regulations.

This Memorandum Opinion shall constitute findings of fact and conclusions of law.

## ORDER

This matter having come before the Court on plaintiffs' motion for preliminary injunction and defendants' motion for remand of this case to the Civil Service Commission, and the Court having entered its Memorandum Opinion, which shall constitute findings of fact and conclusions of law, it is this 16th day of February, 1972

Ordered that plaintiffs' motion for preliminary injunction be and it hereby is denied, and it is further

Ordered that defendants' motion for remand be and it hereby is granted.