**Willie PENN et al., Plaintiffs,**

**v.**

**UNITED STATES of America et al., Defendants.**

**Civ. A. No. 3638–N.**

United States District Court,
M. D. Alabama, N. D.

Oct. 9, 1972.

Morris Dees and Joseph J. Levin, Jr. (Southern Poverty Law Center), Montgomery, Ala.

Orzell Billingsley, Jr., Birmingham, and J. L. Chestnut, Jr., Selma, Ala., for plaintiffs.

Ira DeMent, U. S. Atty., and Kenneth E. Vines, Asst. U. S. Atty., Montgomery, Ala., for defendants.

### ORDER

JOHNSON, Chief Judge.

Plaintiffs Penn and Foster bring this class action against the United States and various named individuals as heads of departments and agencies of the United States which have offices, agents, and a portion of their operations located in Alabama. The plaintiffs charge the defendants with systematic racial discrimination in hiring and promotion. Plaintiffs allege jurisdiction under Title 28, United States Code, Sections 2201, 1331, 1343(4), 1346(a)(2), and 1361.

The gist of the plaintiffs' allegations of racial discrimination is that the percentage of black General Schedule (GS) employees in the agencies headed by the individual defendants who are operating in Alabama is 2.6 percent of the total number of said employees,[1] while blacks comprise 26.4 percent of the population of Alabama. This disparity is alleged to be the result of specific practices constituting systematic discrimination based solely on race. Plaintiffs Penn and Foster, claiming to represent the class of those so discriminated against, allege

specific acts of discrimination on the part of employing and promoting officials of Maxwell Air Force Base located in Montgomery, Alabama. Plaintiffs seek a declaration that defendants have engaged in and continue to engage in the practice of denying blacks in Alabama an equal right to contract for employment in violation of Title 42, United States Code, Section 1981 and that defendants have engaged in and continue to follow a practice of systematic employment discrimination against blacks in Alabama in violation of the Fifth Amendment to the Constitution of the United States. They seek an order in the nature of mandamus compelling defendants to perform their duty under Executive Order 11478 and further seek an order requiring affirmative action on the part of the defendants to eliminate the effects of past discriminatory practices. The case is now submitted upon defendants' claim in their motion to dismiss, that this Court lacks jurisdiction over the subject matter. Specifically, the motion to dismiss presents issues as to whether plaintiffs' claims are barred by the doctrine of sovereign immunity and whether plaintiffs have failed to exhaust the available administrative remedies prior to initiating this action.

### I. SOVEREIGN IMMUNITY

While the doctrine of sovereign immunity has been severely criticized by courts and commentators, it is, nevertheless, well settled in the Fifth Circuit and throughout the federal judiciary that the United States cannot be sued without its consent. See, e. g., Blaze v. Moon, 440 F.2d 1348, 1349 (5th Cir. 1971), and cases cited therein. The plaintiffs, recognizing this general proposition, contend, however, that the United States has consented to be sued in instances such as those now presented and even if the United States as an entity has not consented to be sued, this is in reality a suit against the individual officers named as defendants. The doctrine of sov-

[1] Of the 27,391 GS employees employed in the various agencies and departments headed by the individual defendants, only 739 are black.

ereign immunity does not bar such an action against individual officers of the United States.

■■ This Court has concluded that to the extent that the plaintiffs attempt to sue the United States their action is barred by the doctrine of sovereign immunity.[2] This Court is unwilling to say that Title 42, United States Code, Section 1981 amounts to a consent on the part of the United States to be sued. In support of their contention that Section 1981 runs against the federal government, plaintiffs argue that consent can be inferred from the language of the statute itself and from recent cases holding that the statute is founded on the Thirteenth Amendment as well as the Fourteenth and is therefore not limited to state action. It is well-settled law, however, that a waiver of sovereign immunity must be specific and explicit and cannot be implied by construction of an ambiguous statute. United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L. Ed. 888 (1940); Barefield v. Byrd, 320 F.2d 455 (5th Cir. 1963), cert. denied 376 U.S. 928, 84 S.Ct. 675, 11 L.Ed.2d 624 (1964). Any doubt as to this issue was put to rest by the Fifth Circuit's recent decision in Beale v. Blount, 461 F. 2d 1133 (5th Cir. 1972), which held a Section 1981 suit for injunctive relief against the federal government to be barred by the doctrine of sovereign immunity. That decision is controlling in this circuit and forecloses further discussion of the sovereign's consent to be sued under Section 1981. Consequently, as to the United States, this action will be dismissed.

## II. INDIVIDUAL OFFICIALS AS DEFENDANTS

■■ In determining whether an action comes within the purview of the sovereign immunity doctrine, the critical consideration is not the identity of the parties but rather the result of the judgment or decrees that might be entered. Carter v. Seamans, 411 F.2d 767, 770 (5th Cir. 1969). The general rule, stated in Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949) and Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), and reiterated in this circuit in Carter v. Seamans, is that a suit is against the sovereign if the judgment sought would expend itself on the public territory or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the government from acting or to compel it to act.

There are, however, two well-recognized instances where suits for specific relief against public officers are not considered to be against the sovereign.

In these two instances the sovereign's consent to be sued is not required and the defense of sovereign immunity is unavailable. Thus, the actions of a public officer can be made the basis of a suit for specific relief against the officer as an individual if, but only if, (1) the officer's action is beyond his statutory powers, or (2) if within those powers, the powers themselves or the manner in which they are exercised are constitutionally void.

Carter v. Seamans, 411 F.2d at 770, citing Larson v. Domestic & Foreign Commerce Corp., *supra*, and Dugan v. Rank, *supra*.

As the court in *Carter* points out, a determination of the sovereign immunity issue to some extent requires a ruling on the ultimate questions in the suit. In order to avoid deciding a case on the merits under the guise of resolving the preliminary jurisdictional issues, however, courts are said to have adopted the procedure, specifically applied in *Carter*, "of accepting at face value, for jurisdictional purposes, the averments of the complaint unless they are so transparent-

---

2. It is, of course, regrettable that, having so vigorously brought and prosecuted actions against various Alabama agencies to ensure equal education and employment for blacks, the United States government should now be forced to interpose such a defense as the doctrine of sovereign immunity to a charge of racial discrimination in employment.

ly insubstantial or frivolous as to afford no possible basis for jurisdiction, and of giving the averments thus accepted their natural jurisdictional consequences." 411 F.2d at 770.

In applying that technique in the case before it, the court in *Carter* found that for jurisdictional purposes only "the case *sub judice* is not against the United States, but rather one to compel the Secretary of the Air Force to perform a clear legal duty." 411 F.2d at 771. Accordingly, it was held that the defense of sovereign immunity was not available and that defendant's jurisdictional objection based thereon must fail.

█ To the extent that the present case resembles *Carter,* the doctrine of sovereign immunity is likewise not available to defendants, and their jurisdictional objections based thereon must consequently fail. This result is not affected by Beale v. Blount, 461 F.2d 1133 (5th Cir. 1972), Blaze v. Moon, 440 F.2d 1348 (5th Cir. 1971), or Gnotta v. United States, 415 F.2d 1271 (8th Cir. 1969), on which defendants rely. The court in *Beale* and the court in *Blaze* found no *Larson-Dugan* exceptions to the doctrine of sovereign immunity. The *Gnotta* court mentioned the exceptions but concluded that the evidence and findings the court had before it by virtue of a prior administrative proceeding reflected that the case "obviously" did not come within either of the *Larson-Dugan* exceptions.

Thus, adhering to the principles of Carter v. Seamans, this Court must accept at face value for jurisdictional purposes the averments of the complaint. With regard to the individual defendants, the averments of the complaint clearly state claims falling within the *Larson-Dugan* exception to the doctrine of sovereign immunity which permits actions against officers of the United States whose exercise of their powers is alleged to be constitutionally void.[3]

3. This Court finds it unnecessary to rule on whether Section 1981 runs against federal officers. Consequently, it is unnecessary to determine whether a claim based on Section 1981 falls within the

## III. SOVEREIGN IMMUNITY IN ACTIONS AGAINST INDIVIDUAL OFFICIALS

In a footnote in Larson v. Domestic & Foreign Commerce Corp., *supra*, the Supreme Court discussed the possibility that even though one of the exceptions to sovereign immunity might be applicable, certain types of relief would not be granted:

> Of course, a suit *may* fail, as one against the sovereign, even if it is claimed that the officer being sued has acted unconstitutionally or beyond his statutory powers, if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign or the disposition of unquestionably sovereign property.

337 U.S. at 692, n. 11, 69 S.Ct. at 1462 (emphasis added). The Court of Appeals for the Ninth Circuit, however, reaffirmed in State of Washington v. Udall, 417 F.2d 1310 (9th Cir. 1969), its pre-*Larson* position that "may" did not mean "must." The court concluded that even affirmative relief should be granted except where "an intolerable burden on government functions" would result. 417 F.2d at 1318.

█ Nothing in Ogletree v. McNamara, 449 F.2d 93 (6th Cir. 1971), cited by defendants, holds contrary to State of Washington v. Udall. To grant relief of the type prayed for in *Ogletree* would clearly place an intolerable burden on government functions within the meaning of State of Washington v. Udall. However, in the case *sub judice* the relief requested would not constitute such a burden. The *Larson-Dugan* exceptions to the doctrine of sovereign immunity are, of course, normally limited, as the Court in *Larson* made clear, to suits for specific relief. However, the

*Larson-Dugan* exception which allows suits against officers whose acts are alleged to be beyond their statutory powers.

Court in *Larson* defines specific relief as "the recovery of specific property or monies . . . or injunction either directing or restraining the defendant officer's actions." 337 U.S. at 688, 69 S. Ct. at 1460. Thus, it is clear that specific relief allowable by *Larson* includes claims for back wages as well as a request for injunctive relief.

## IV.  EXHAUSTION OF REMEDIES

■ It is rather basic that available administrative remedies must be exhausted before a court will decide a constitutional question. W.E.B. DuBois Clubs of America v. Clark, 389 U.S. 309, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967). In Beale v. Blount, *supra*, on which defendants heavily rely, the Fifth Circuit affirmed the dismissal of a discharged federal employee's complaint for failure to exhaust administrative remedies. An important distinction between *Beale* and the present case, however, is that in *Beale* the plaintiff made no attempt to exhaust his administrative remedies with respect to his claim of racial discrimination or even to allege that resort to the administrative processes would be a meaningless ritual.[4] The plaintiff in *Beale* merely claimed that he did not need to present his claim of racial discrimination for administrative determination before bringing suit in federal court. In the case *sub judice* plaintiffs specifically allege that they attempted to exhaust administrative remedies, only to be thwarted in the initial stages of those proceedings by federal officials charged with the duty of hearing complaints of racial discrimination and informing plaintiffs of additional channels of appeal. Plaintiff Penn claims he was not told by his Equal Employment Counselor, to whom he complained, of his right to file a complaint. Plaintiff Foster, who did register a complaint with the Equal Employment Officer, claims he was told there was nothing left for him to do but bring suit in federal court. Thus, the issue of exhaustion of administrative remedies in the present case reduces to an issue of the legal sufficiency of plaintiffs' abortive attempts to exhaust available remedies.

■ Accepting plaintiffs' allegations as true for the limited purpose of considering defendants' motion to dismiss, it is clear that with regard to those remedies granted by Executive Order 11478 plaintiffs have adequately exhausted their administrative remedies. Their failure to go further in the administrative processes is solely due to the breach of duty expressly imposed on certain employees of the individual defendants. See 5 C.F.R. §§ 713.213–713.215.[5]

It clearly appears, therefore, that to the extent necessary the plaintiffs in the case now before this Court have sufficiently alleged exhaustion of their administrative remedies.

In accordance with the foregoing, it is the Order, Judgment and Decree of this Court:

1.  That the motion to dismiss filed by the United States of America be and the same is hereby granted.

2.  That the motion to dismiss filed by the individual defendants be and the same is hereby denied.

It is further Ordered that the parties be and they are hereby, after the expiration of fifteen days from this date, authorized to proceed with their discovery.

4.  The Sixth Circuit's decision in Ogletree v. McNamara, *supra*, relied on by defendants, is similarly distinguished.

5.  Defendants' reliance on Douglas v. Hampton, 338 F.Supp. 18 (D.C.D.C. 1972) is misplaced. *Douglas* is no authority for the proposition that individuals such as the plaintiffs must pursue the administrative remedies created by the Equal Employment Opportunity Act of 1972, 86 Stat. 103. The court in *Douglas* was acting on a motion to remand to the Civil Service Commission, not a motion to dismiss.

In considering that motion, the court said "although not required by plaintiffs' failure to exhaust later-created administrative remedies, [the court] has discretion, in the interest of sound judicial administration, to remand where the agency has general jurisdiction of, and a particular expertise in, the issues presented."