William M. SPENCER et al.,
Plaintiffs,

v.

James R. SCHLESINGER, Secretary of Defense, et al., Defendants.

Civ. A. No. 73–716.

United States District Court, District of Columbia.

April 23, 1974.

Gary Gerlach, Arnold & Porter, Washington, D. C., Lauralee Matthews, Joel Selig, Lawyers Committee for Civil Rights, for plaintiffs.

Eric Marcy, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

CORCORAN, District Judge.

This action is one for injunctive and monetary relief. It arises out of alleged racially discriminatory employment practices in the Defense Communications Agency (DCA) of the United States Department of Defense. Individual plaintiffs William Spencer, Gary Griffin and Frederick Bradley are black employees of DCA. The Black Employees Against Discrimination (BEAD), an association of some 44 black employees of DCA, has been joined as a plaintiff by the amended complaint.[1]

### I

All plaintiffs allege a broad range of racially discriminatory employment practices at DCA in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1970), *as amended* by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16 (Supp. II, 1972).

---

1. The original complaint was filed by plaintiffs Spencer and Griffin on their own behalf and as representatives of a class. The amended complaint added plaintiff Bradley, suing individually and on behalf of a class, and BEAD.

They also seek to establish a class action under *Fed.R.Civ.P.* 23(b)(2) and Local Rule 1–13(b).[2]

This Court's jurisdiction is invoked pursuant to 42 U.S.C. § 2000e–16(c) and 28 U.S.C. § 1343(4) (1970).[3]

In addition to the plaintiffs' motion for class action certification there is also before the Court at this time defendants' motion to dismiss or, alternatively, for summary judgment. The Court (1) denies the motion to certify as a class action; (2) dismisses the claims of co-plaintiffs Griffin and Bradley and BEAD; and (3) remands the complaint of Spencer to the DCA for further action not inconsistent herewith.

## II

On September 21, 1972, plaintiff Spencer registered an informal complaint with DCA, pursuant to 5 C.F.R. § 713.213 (1973). He alleged racial discrimination in the filling of a Communications Specialist GS–12 position at DCA for which both Spencer and plaintiff Griffin had applied and been rejected. A white applicant was selected.

In accordance with DCA grievance procedures, Spencer chose Griffin as his Equal Employment Opportunity Counselor to investigate his complaint. Griffin reported evidence of "institutionalized discrimination or systematic exclusion of blacks in higher positions" at DCA. (DCA Administrative Record, Tab A–1, hereinafter cited as *Record.*)

As a result of that report, Spencer, on October 25, 1972, filed a timely complaint pursuant to 42 U.S.C. § 2000e–16(a) and 5 C.F.R. § 713.214, with the

Director of Equal Employment Opportunity at DCA. (*Id.*) Spencer alleged personal grievances and a policy of "institutionalized racism" at DCA. The agency conducted an extensive investigation of his claims pursuant to 5 C.F.R. § 713.216 and issued a report adverse to Spencer's individual claim. Additionally, the DCA report found that "institutionalized racism is neither the policy nor the practice of DCA." (*Record,* Tab A–1.)

In the meantime Spencer had consulted with counsel. On receipt of DCA report, Spencer's counsel, on March 1, 1973, transmitted "preliminary comments" to DCA in the course of which a large number of documents and voluminous statistics were requested of the agency. Counsel wrote: "If you are unable to answer all our questions within three weeks time, we request that your agency make a final determination so this matter may proceed to the next stage." (*Record,* Tab B–14.)

On March 14, 1973, DCA notified Spencer that it could not furnish the material requested short of the deadline fixed by his counsel. It accordingly proceeded to a "final" decision[4] on his complaint as requested. Based upon a review of the record as it then existed DCA concluded that Spencer had not been discriminated against either by reason of personal bias or institutional racism. In its decision letter, DCA also stated that it would be willing, pursuant to 5 C.F.R. § 713.217, to hold an evidentiary hearing, but because of the "magnitude" of Spencer's request for information, and the expressed desire for either the delivery of the information

2. Plaintiffs urge the following class:
   All past, present and future black employees in the United States Defense Communications Agency (DCA), all past, present and future black applicants for employment in DCA, and all black persons who would apply or would have applied for employment in DCA but for the defendants' racially discriminatory recruitment and employment practices.

3. Plaintiffs also assert independent violations of the Civil Rights Act of 1866, 42 U.S.C. §

1981 (1970); Exec. Order No. 11478, 3 C. F.R. 803 (1966-70 Comp.), 42 U.S.C. § 2000e (1970); and the Fifth Amendment to the Constitution of the United States. The amendment of Exec. Order 11478 by Exec. Order No. 11590 is of no consequence in this case.

   Additional jurisdictional premises are 28 U. S.C. §§ 1331, 1361 (1970).

4. The DCA final decision was in full conformity with 5 C.F.R. § 713.221.

within three weeks or a final decision, concluded that Spencer did not in fact want a hearing. (*Record,* Tab B–16.)

On March 21, 1973, Spencer's counsel, in response to the DCA decision and pursuant to 5 C.F.R. § 713.217 and § 713.218, requested a hearing before an independent Civil Service Commission (CSC) Hearing Examiner at the agency level. (*Record,* Tab B–17.) However, CSC informally advised DCA that they would not appoint a Hearing Examiner in view of the fact that the complainant, Spencer, had already received a final agency decision. (*Record,* Tab B–18.) Spencer was advised that he could appeal DCA's decision to the CSC Board of Appeals and Review, pursuant to 5 C.F. R. § 713.231. (*Id.*) However, Spencer along with Griffin, chose to file this action on April 13, 1973, pursuant to 42 U.S.C. § 2000e–16(c) and 5 C.F.R. § 713.281.

As is evident from this recital of events Spencer has never received a full administrative hearing at the agency level under 5 C.F.R. § 713.218.

Following the disposition of the Spencer complaint, some 28 members of BEAD (including its chairman, plaintiff Bradley), filed a complaint with DCA on July 9, 1973. It included allegations of both individual and institutional racial discrimination. On August 9, 1973, DCA dismissed the BEAD complaint for failure to allege specific individual complaints under 5 C.F.R. § 713.214(a)(1). Bradley and BEAD assert that this refusal by DCA to investigate their claims gives them an independent right to sue DCA under Title VII. *See* 5 C.F.R. § 713.215. Consequently, the amended complaint was filed on September 10, 1973.

## III

Earlier in this action the government had moved to remand the Spencer complaint to DCA for the full evidentiary hearing contemplated by the Equal Employment Opportunity Act of 1972 (the 1972 Act) and 5 C.F.R. § 713.218. By order filed October 26, 1973, the Court denied the motion and further held that plaintiffs were entitled to litigate the case "in the same general manner as cases involving private employers are litigated" pursuant to Title VII. Having had further opportunity to review the Spencer complaint, the statute upon which it is based, the legislative history of that statute and the developing body of case law in the field, the Court now concludes that in the interests of justice, the Order of October 26, 1972 should be vacated, and that disposition be made as hereinafter set out as to each plaintiff.

### A. *Spencer*

■ There is conflict in reported cases but the Court is persuaded that it was the clear intent of Congress to accord federal employees, alleging discrimination, evidentiary hearings at the agency level, and thereafter to afford a review of the administrative record in a district court after exhaustion of all available administrative remedies.[5] Hackley v. Johnson, 360 F.Supp. 1247 (D.D.C.1973) (Gesell, J.); Handy v. Gayler, 364 F.Supp. 676 (D.Md.1973); Pointer v. Sampson, 62 F.R.D. 689 (D.D.C., 1974) (Gasch, J.). *See also* Thompson v. Department of Justice, 372 F.Supp. 762 (N.D.Cal.1974) [reversing prior decision in 360 F.Supp. 255]; Chandler v. Johnson, 7 (CCH) EPD ¶ 9139 (C.D.Cal.1973); Tomlin v. Air Force Medical Center, 369 F.Supp. 353 (S.D.Ohio 1974); Gautier v. Weinberger, 6 (CCH) EPD ¶ 9001 (D.D.C.1973)

5. The traditional remedy for aggrieved federal employees, in personnel matters of a non-Title VII nature, is judicial review on the record after exhaustion of all administrative remedies. *See* Polcover v. Secretary of the Treasury, 155 U.S.App.D.C. 338, 477 F.2d 1223 (1973). *Cf.* Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). *See* Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), for exhaustion of state administrative remedies in a civil rights case.

(Gasch, J.); Williams v. Mumford, 6 FEP Cases 483 (D.D.C.1973) (Jones, J.). *Contra,* Henderson v. Defense Contract Administration Services Region New York, 370 F.Supp. 180 (S.D.N.Y. 1973); Jackson v. U. S. Civil Service Commission, C.A. 72–H–1003 (S.D.Tex., filed Dec. 13, 1973); Griffin v. U. S. Postal Service, No. 72–487–Civ–J–T (M. D.Fla., filed Feb. 7, 1973).

■■ The review of the administrative record, after exhaustion of administrative remedies, does not contemplate a trial *de novo*.[6] This conclusion is based upon the language of the 1972 Act, the legislative history[7] and the reasoning of *Hackley, Handy, Pointer* and *Thompson.*

There is ambiguous language in the legislative history which lends support to the argument which persuaded the Court to enter its Order of October 26, 1972, to the effect that employees of the Federal Government are to be treated in all respects the same as employees in the private sector, including a statutory right to a trial *de novo.* Such an argument, however, does not withstand close scrutiny.[8]

The fact is that federal employees and employees in the private sector *are* treated differently by Congress under Title VII. In the case of the private employee, Congress designated the Equal Employment Opportunity Commission (EEOC) to settle his complaint, but in the case of the federal employee Congress chose another route—*i. e.,* it designated the Civil Service Commission (CSC) to consider the complaint. Where the voluntary informal efforts within the EEOC were unsuccessful in the private sector Congress gave the private employee immediate access to the Court and a trial *de novo*;[9] but where the federal employee felt aggrieved, Congress designated CSC to mediate the dispute *after* the agency had been given the opportunity to put its own house in order. Then and only then Congress allowed the federal employee, where aggrieved on discrimination grounds, to seek review in a district court of the prior administrative action, thus according to the federal employee a right which he did not have prior to 1972—an irrevocable right to enter a federal court.[10] The end result is the same— the federal employee and the private employee are given a day in Court.

The reason for different administrative treatment is clear. Prior to 1972, a

---

6. This conclusion necessarily carries with it a denial of class action certification. Where there is review on the record and no trial *de novo,* there is no class action. *But see* Richerson v. Fargo, 61 F.R.D. 641 (E.D.Pa., filed Feb. 5, 1974), where the Court did grant. class action certification in a federal employee discrimination case brought pursuant to the 1972 Act.

   *See generally* Miller, Class Actions and Employment Discrimination under Title VII of the Civil Rights Act of 1964, 43 U.Miss. L.J. 275 (1972); Developments in the Law: Employment Discrimination and Title VII of the Civil Rights Act of 1964, 84 Harv.L.Rev. 1109 (1971).

7. *See* Legislative History of the Equal Employment Opportunity Act of 1972 (H.R. 1746, P.L. 92–261), Subcomm. on Labor of Senate Comm. on Labor and Public Welfare, 92d Cong., 2d Sess. (Comm. Print 1972), a compilation of bills, reports and debates, culminating in the enactment of the 1972 Act.

   *See generally* Sape and Hart, Title VII Reconsidered: The Equal Employment Opportunity Act of 1972, 40 Geo.Wash.L.Rev. 824 (1972).

8. *See, e. g.,* the detailed discussion by Judge Gasch in Pointer v. Sampson, *supra,* Memorandum at 7–9, concerning the statements of Senator Williams, Chairman of the Senate Committee on Labor and Public Welfare and also floor manager of the Committee Bill, S.2515 [92d Cong., 1st Sess. (1971)].

9. The private prerequisites within the statutory scheme are met when such a petitioner (1) files a timely complaint of employment discrimination with the EEOC, and (2) receives and acts upon, within 30 days, the EEOC's statutory notice of the right to sue. 42 U.S.C. §§ 2000e–5(b), (e) and (f). *See, e. g.,* McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also* Alexander v. Gardner-Denver Co., 415 U.S. 36, at 47, 94 S. Ct. 1011, 39 L.Ed.2d 147 (1974); Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). *Compare* federal employee prerequisites in 5 C.F.R. §§ 713.-211–713.222.

10. *See* note 5 *supra.*

federal employee, unlike his private counterpart, had to surmount a practically insurmountable defense of sovereign immunity before securing a hearing in Court; the private employee did not face that obstacle. In mandating a right to enter federal court at a given point in time, the discrepancy in treatment was alleviated. However, once in Court, dissimilar treatment again appears. Thus the private sector is generally granted a trial de novo,[11] but the Congress has determined that in the usual case a federal employee should redress his grievances in a two-step process, first within the employee's own agency, with CSC review, and thereafter by federal court *review* of such agency and/or CSC action.

Of course Congress was not blind to the possible, but unlikely situation that might develop if an agency or the CSC was so intransigent as to take *no* action on an employee's complaint. In that instance, after six months time, Congress dictated that the employee may proceed directly to district court. Lacking an administrative record, a trial in such an instance would of course be mandated. But the unmistakable indication of Congressional intent from the plain language of the 1972 Act and its legislative history, was that, should court action be required, the federal employee would arrive at the courthouse door with an administrative record to be reviewed. As noted *supra,* such a review is consistent with present practice in federal employment disputes. Only in the rare instance would there be a plenary hearing in district court.

The foregoing reasoning dictates that the Spencer complaint should be remanded to the DCA for a full agency evidentiary hearing contemplated by the Congressional scheme.[12]

The administrative record in this case indicates that both parties at one time agreed to a full evidentiary hearing, albeit at different points in time. Thus in its letter of March 14, 1973, DCA offered Spencer a hearing should he desire it, (*Record,* Tab B–14), and in their letter of March 21, 1973, Spencer's counsel specifically requested a hearing, (*Record* Tab B–17). The Court is persuaded that the full hearing contemplated by Congress was thwarted by the "or-else" unmeetable demands of counsel that their requests be met by a deadline fixed by them. The interests of justice would seemingly be better served if the statutory scheme were to be followed.

Accordingly, Spencer's complaint will be remanded to DCA for a full hearing in conformity with 5 C.F.R. § 713.218.[13] *Cf.* Douglas v. Hampton, 338 F.Supp. 18 (D.D.C 1972) (Smith, J.).

### B.   Griffin and Bradley

Griffin and Bradley must be dismissed as coplaintiffs for their failure to exhaust the available administrative remedies afforded them by 5 C.F.R. §§ 713.211–713.222. Such failure similarly leaves no alternative for this Court other than to dismiss as well Griffin's and Bradley's independent claims under 42 U.S.C. § 1981;[14] Executive Order No. 11478;[15] and the Fifth Amendment.[16]

---

11.   *See* note 9 *supra.*

12.   Such a holding is fully consistent with the *congressional policy that Title VII discrimination cases be accorded the "highest priority."* Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 19 L. Ed.2d 1263 (1968).

13.   Such a holding necessarily pretermits a decision on Spencer's claims under 42 U.S.C. § 1981; Exec. Order No. 11478; and the Fifth Amendment.

14.   For discussion of § 1981 as an independent cause of action, *see* Penn v. Schlesinger, *infra,* 490 F.2d 700. *Cf.* Penn v. Stumpf, 308 F.Supp. 1238 (N.D.Cal. 1970).

15.   Exec. Order No. 11478, of course, creates a cause of action only by virtue of 42 U.S.C. § 2000e–16(c). *Cf.* Gnotta v. United States, 415 F.2d 1271 (8th Cir. 1969) (Blackmun, J.), *cert. denied,* 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970) (dismissal of action on grounds of sovereign immunity). *See also* Ogletree v. McNamara, 449 F.2d 93 (6th Cir. 1971); Place v. Weinberger, C.A. No. 38902 (E.D.Mich., July 5, 1973) (dismissal of action on grounds, *inter alia,* that Court was without subject matter jurisdiction as to Exec. Order No. 11478).

16.   For restrictions as to discrimination imposed on the Federal government by the due

W. E. B. DuBois Clubs of America v. Clark, 389 U.S. 309, 88 S.Ct. 450, 19 L. Ed.2d 546 (1967). *Cf.* Penn v. United States, 350 F.Supp. 752, 756 (M.D.Ala. 1972), *aff'd on other grounds sub nom.,* Penn v. Schlesinger, 490 F.2d 700, 705–707 (5th Cir. 1973); Beale v. Blount, 461 F.2d 1133 (5th Cir. 1972); Eisen v. Eastman, *supra* note 5.

### C. BEAD

 The Court finds that BEAD is not a proper party in this action and accordingly must be dismissed as a co-plaintiff.

Plaintiffs assert that BEAD accrued an independent statutory right to sue under Title VII, pursuant to 5 C.F.R. § 713.215, when DCA dismissed or rejected its proffered claim of racial discrimination toward BEAD's members. This contention is far wide of the mark, for § 713.215 clearly envisions only specific individual claims of discrimination within the Congressinally-mandated regulatory framework of 5 C.F.R. §§ 713.211 to 713.222. Plaintiffs moreover ignore the fact that third-party, organizational complaints, such as BEAD's, are provided for in 5 C.F.R. § 713.251. *Cf.* Hackley v. Johnson, *supra,* 360 F.Supp. at 1254 n.11. It is clear that when DCA dismissed or rejected BEAD's complaint, BEAD's remedy was not to seek relief in this Court, but rather to appeal that decision within 30 days to the Civil Service Commission, as provided in 5 C.F.R. § 713.251(c). Accordingly, BEAD's amended complaint must be dismissed.[17]

### IV

Accordingly, it is this 23rd day of April, 1974,

*Ordered* that Plaintiff's motion for class action certification be, and the same is hereby, denied; and it is

*Further ordered* that the amended complaints of plaintiffs Gary Griffin, Frederick Bradley and DCA BEAD be, and the same are hereby, dismissed; and it is

*Further ordered* that the Order of this Court in the above-captioned action, filed October 26, 1973, be, and the same is hereby, vacated; and it is

*Further ordered* that defendants' motion to remand plaintiff William Spencer's individual complaint to the Defense Communications Agency for an administrative hearing be, and the same is hereby, granted.

---

process clause of the Fifth Amendment, *see* Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); Gibson v. Mississippi, 162 U.S. 565, 591, 16 S.Ct. 904, 40 L. Ed. 1075 (1896).

17. Similarly, BEAD's other remaining independent premises must also be dismissed. The Court, however, intimates no view on BEAD's standing to sue. *Compare* O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); Nader v. Saxbe, 497 F.2d 676 at 680 (D.C.Cir. 1974).