497 F.2d 970
 8 Fair Empl.Prac.Cas. 453, 8 Empl. Prac. Dec. P 9543
Willie PENN, Individually, etc., et al., Plaintiffs-Appellees,
v.
James R. SCHLESINGER, Individually and as Secretary of
Defense, etc., et al., Defendants-Appellants.
 No. 72-3684.
 United States Court of Appeals, Fifth Circuit.
 July 26, 1974.
 
 Ira DeMent, U.S. Atty., Kenneth E. Vines, Asst. U.S. Atty., Montgomery, Ala., Morton Hollander, David Anderson, Walter H. Fleischer, James C. Hair, Jr., Civil Div., Dept. of Justice, Washington, D.C., for defendants-appellants.
 Morris S. Dees, Jr., Southern Poverty Law Center, Joseph J. Levin, Jr., Charles F. Abernathy, Montgomery, Ala., Orzell Billingsley, Jr., Birmingham, Ala., J. L. Chestnut, Jr., Selma, Ala., for plaintiffs-appellees.
 Before BROWN, Chief Judge, TUTTLE, Senior Circuit Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY and GEE, Circuit Judges.
 PER CURIAM:
 
 
 1
 For the reasons set out in the dissenting opinion of Judge Godbold, Penn v. Schlesinger, 490 F.2d 700, 707-714 (CA5, 1973), the court en banc concludes that the claims of the individual plaintiffs should have been dismissed for failure to exhaust administrative remedies.[1]
 
 
 2
 The opinion of the panel is reversed. The order of the District Court is reversed and the cause is remanded to the District Court with instructions to dismiss the case.
 
 
 3
 TUTTLE, Senior Circuit Judge, with whom WISDOM, GOLDBERG and MORGAN, Circuit Judges, join, dissenting:
 
 
 4
 With deference, I feel that I must dissent from the decision and the opinion of the Court, sitting en banc, in reversing the denial by the trial court of a motion to dismiss this section 1981 suit against the heads of the United States Government departments for racial discrimination in hiring policies, because the named plaintiffs in the class action had failed to exhaust certain Civil Service administrative remedies available to them.
 
 
 5
 There are two important issues presented to the Court, only one of which could be considered by the original panel because of the rule of stare decisis within the Circuit. The original decision is now reversed by the per curiam opinion of this Court, which adopts the dissenting opinion. For the prevailing and dissenting opinions previously entered see 490 F.2d 700 (5th Cir. 1973).
 
 
 6
 The two issues which are here presented are: (1) is a black plaintiff and an association seeking to represent black employees and prospective employees of some of the departments of the United States Government, who allege, in a section 1981 complaint, egregious acts of discrimination against blacks as a class in employment and promotion in the various government departments, required to exhaust administrative remedies promulgated as regulations by the Civil Service Commission to implement Executive Order No. 11478, as amended by Executive Order No. 11590[1] as a condition precedent to their filing either an individual or class action in the United States Courts against United States Government officials who are charged with having been responsible for the acts of discrimination; (2) then, assuming such exhaustion is a prerequisite to the filing of a section 1981 suit, did the conduct of the subordinate officials, acting as Equal Employment counselors, which the plaintiffs claim aborted their efforts to obtain redress through administrative means, satisfy the normal requirements of exhaustion.
 
 
 7
 When this case was before the original panel the first question was not open for our consideration. This Court had already in the case of Beale v. Blount, 461 F.2d 1133 (5th Cir. 1972) explicitly held that a section 1981 suit could not be brought against the Postmaster General of the United States in a racial discrimination case in federal employment until the plaintiff had exhausted the administrative remedies which we have heretofore referred to. Being bound by that prior decision, as we were, the panel considered merely the second question which is still in issue here. We concluded that what may be considered to be substantial rebuffs of the plaintiffs in their efforts to have their racial discrimination charges considered by their supervisors, who were also EEO counselors, distinguished this case from Beale v. Blount, supra, in that in the latter case the plaintiff was expressly invited to file a complaint with the agency for administrative handling, but he declined to do so, filing the suit in court instead.
 
 
 8
 Now, however, this Court en banc writes on a clean sheet, it of course being within the competence of the Court sitting en banc to overrule Beale v. Blount, supra, if we conclude that it incorrectly states the law in this important area dealing with efforts to put an end to racially discriminatory hiring practices, whether by private employers, state or local governments, or the United States Government itself.
 
 
 9
 I conclude that the most striking argument for overruling the Beale decision is the fact, which none denies, that both the Supreme Court and this Court have repeatedly held that where a case of alleged discrimination on account of race is alleged under section 1983 against a state or under section 1981 against a private employer, or against an individual under section 1982 even though there are administrative means which are intended to give the discriminatee an opportunity to achieve his desired results, the early Civil Rights statutes are available to a plaintiff as an alternative remedy to any others that may exist, and he is not denied access to the courts because of his failure to choose the other way round. Damico et al. v. California et al., 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967) is a case brought under 42 U.S.C.A. 1983 and it is described in the following manner in the per curiam opinion:
 
 
 10
 'Appellants, welfare claimants under California Welfare and Institutions Code 11250, 11254, and regulation C-161.20 thereunder, sought damages, a declaratory judgment of unconstitutionality and temporary and permanent injunctive relief in this suit under the Civil Rights Act, 42 U.S.C. 1983, 28 U.S.C. 1343. Their complaint alleges that the statute and regulation are discriminatory and that the appellees, in administering them and in applying them to appellants, deprived appellants of equal rights secured by the United States Constitution. The three-judge District Court dismissed the complaint solely because 'it appear(ed) to the Court that all of the plaintiffs (had) failed to exhaust adequate administrative remedies.' This was error. In McNeese v. Board of Education, 373 U.S. 668 (83 S.Ct. 1433, 10 L.Ed.2d 622), noting that one of the purposes underlying the Civil Rights Act was 'to provide a remedy in the federal courts supplementary to any remedy and State might have,' id., at 672 (83 S.Ct. 1433, at 1435) we held that 'relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided (an administrative) remedy,' id., at 671 (83 S.Ct. 1433, at 1435). See Monroe v. Pape, 365 U.S. 167, 180-183 (81 S.Ct. 473, 480-482, 5 L.Ed.2d 492) . . ..'
 
 
 11
 So far as relates to suits against private employers this Court, in Sanders v. Dobbs House, 431 F.2d 1097 (5th Cir. 1970) made short shrift of the contention that when Congress passed Title VII of the Civil Rights Act of 1964 this preempted the general remedial language of section 1981, insofar as the right to contract for employment is concerned. In Sanders we said:
 
 
 12
 'Since there is no language in Title VII that can remotely be construed as directly repealing section 1981, the only means of repeal through preemption would be by implication. Repeals by implication, however, are not favored and 'the intention of the legislature must be clear and manifest . . ." citing cases.
 
 We further stated:
 
 13
 'This interpretation also finds support by analogy in Jones (v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189) where the Court ruled that Title VIII of the Civil Rights Act of 1968 did not repeal 1982 by implication. Moreover, in Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 237, 90 S.Ct. 400, 405, 24 L.Ed.2d 386, 393, . . . the Court stated: 'We noted in Jones v. Alfred H. Mayer Co., that the Fair Housing Act of 1968, 82 Stat. 81, in no way impaired the sanction of 1982. 392 U.S., at 413-417, 88 S.Ct. at 2189-2192. What we said there is adequate to dispose of the suggestion that the Public Accommodations provision of the Civil Rights Act of 1964, 78 Stat. 243, in some way supersedes the provisions of the 1866 Act. For the hierarchy of administrative machinery provided by the 1964 Act is not at war with the principles embodied in 1982."
 
 
 14
 The case of Caldwell v. National Brewing Co., 443 F.2d 1044 (5th Cir. 1971) even more clearly demonstrates the fact that this Court has made it clear that a plaintiff may file suit on a charge of racial discrimination in employment under section 1981 even where he has deliberately bypassed the EEOC administrative remedies under Title VII. This Court said:
 
 
 15
 'We thus are faced with the fact that we have not ruled on the question whether the E.E.O.C. administrative remedies under Title VII of the Act can be deliberately bypassed by a 1981 plaintiff. The Third Circuit recently considered this question in Young v. International Telephone & Telegraph Co., 3 Cir., 1971, 438 F.2d 757, a case involving facts virtually identical to those in the case at bar. The holding was that nothing in Title VII either expressedly or impliedly imposes any jurisdictional barrier to a suit brought under 1981. Pointing to the differences in the scope of the remedies afforded under Title VII and 1981, such as the applicable statutes of limitations and the provision for appointment of counsel and the award of attorney's fees under Title VII (2000e-5(e)(k)), the Third Circuit concluded that appellant has an independent remedy under 1981 without respect to exhaustion under Title VII. We agree.' 443 F.2d 1044, 1046.
 
 
 16
 Granting the existence of a 1981 remedy against government officials, which is not drawn in issue by the dissenting opinion, which now becomes the opinion of this Court, it completely escapes my comprehension to understand why the Court should fashion a rule that would give federal officials, acting on behalf of the executive department, preferred status over both private employers, real estate dealers and state governments, by hedging about any suit under the Civil Rights law against federal functionaries by a requirement that the agencies be first given an opportunity to police themselves.
 
 
 17
 I have referred to the allegations of the complaint as complaining of 'egregious acts' of discrimination against blacks by the named defendants. These allegations, which must be taken as true for the purpose of this motion to dismiss, allege, for instance, that in the Department partment of Defense, in which plaintiff Penn is employed, there are 1,899 G.S. (white collar) Air Force employees in Alabama of which thirty-three or 1.7% Are black; 14,000 G.S. Army employees in Alabama of which 235 or 1.7% Are black; thirty-five Navy G.S. employees in Alabama of which none is black; forty-eight G.S. Defense Activities employees in Alabama of which none is black; and 366 G.S. Defense Supply Agency employees in Alabama of which fifteen or 4.1% Are black. The black population of Alabama is 26.4%. These statistics would seem, under all the standards used by this Court, e.g., Morrow v. Crisler, 491 F.2d 1053 (5th Cir. en banc 1974)[2] to show a strong prima facie case of discrimination.
 
 
 18
 It is alleged that in the district court case of United States v. Frazier, 317 F.Supp. 1079 (M.D.Ala.1970) the United States had brought a broad suit to seek the end to segregated employment by a wide variety of Alabama State agencies to force equal employment of blacks. It is clear that this was the purpose and effect of the Frazier case. It is also alleged that in a recent such suit the Justice Department urged upon the court that it require Alabama State Troopers to hire 25% Blacks because Alabama had no black state troopers. See Morrow v. Crisler, supra, and NAACP v. Allen, 5 Cir., 1974, 493 F.2d 614. It was further alleged that Alabama, with 19,296 merit system employees (equivalent to G.S.), exceeds the federal government in percentage of black employees in G.S. positions.
 
 
 19
 We cannot but take judicial notice of the fact that the United States Department of Justice which is alleged to have 264 G.S. employees in Alabama and had only eleven, or 4.2%, blacks has pictured itself, and has frequently acted out the part of, being the protagonist of the federal policy to put an end to racial discrimination in all facets of our national life that enjoy constitutional protections. This causes me to share the feeling of the trial court where in a footnote to the opinion the court said:
 
 
 20
 'It is, of course, regrettable that, having so vigorously brought and prosecuted actions against various Alabama agencies to insure equal education and employment for blacks, the United States government should now be forced to interpose such a defense as the doctrine of sovereign immunity to a charge of racial discrimination in employment.' (350 F.Supp. 754.)
 
 
 21
 I would express that same feeling to the defense put forward by the government in the nature of its claim that the Civil Rights Act of 1866 may still be used against the state and private individuals but may not run except conditionally against federal officials who are derelict in their duties. I therefore express the deep seated feeling that this Court should not undertake to create a barrier to the filing of a section 1981 suit against federal officials which does not exist in similar actions against either state officials or private individuals.
 
 
 22
 It is also difficult for me to understand the concern expressed in the dissenting opinion touching on the 'massive' nature of the law suit in light of the complete lack of hesitancy on the part of the United States to undertake as it did in United States v. Frazier, supra, to compel the State of Alabama to bring all of its merit system employees into compliance with federal guidelines with respect to discriminatory practices. The government did not move in the trial court to have the court determine whether the case should properly proceed as a class action. If, in fact, the case was too 'massive' to be properly handled as a class action there would be no restraints upon the trial court's limiting the action to the class within a single department, the Defense Department, for instance, or even the Air Force, or to limit it to Air Force employees at Maxwell Air Force Base, the site of plaintiff's employment. Clearly no such objection as this is available on a motion to dismiss.
 
 
 23
 The fact that the NAACP is also a party to the action further emphasizes the impropriety, to my mind, of the decision by this Court to direct the dismissal of the law suit. Under the regulations that existed in 1971, and which were the only ones in effect at the time the suit was filed, it was expressly provided that such an organization could not attack the discriminatory practices in general but could only appear on behalf of the named plaintiffs. In light of such limitation, it is inconceivable to me that the Court could hold that there was any administrative remedy available for the NAACP as a plaintiff to test out the degree to which the all pervasive discriminatory practices (as alleged) could be alleviated. The amendment to the regulations two weeks after the trial court's judgment, could not, it seems to me, warrant a dismissal of the suit which, when filed, was not subject to any objection that the NAACP had failed to exhaust any remedies.
 
 
 24
 We are not here dealing with a case where a plaintiff relies upon a federal statute as the basis of his right of action against federal defendants when the statute relied upon itself prescribes an administrative remedy. The doctrine of exhaustion of administrative remedies is discussed in McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), a case in which the doctrine was not applied. The Supreme Court quotes with approval the language from Myers v. Bethlehem Ship Building Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938) as saying:
 
 
 25
 'No one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'
 
 
 26
 Here we are dealing with no 'prescribed' remedy.
 
 
 27
 Such remedy as exists does so simply by virtue of the existence of the Executive Order. It does not, as we have seen, either repeal the basic Civil Rights cause of action nor become an essential part to a plaintiff's reliance on these Civil Rights sections unless, for reasons satisfactory to us, this Court should declare it to be so.
 
 
 28
 With all the mandatory and cogent language as is present in the executive order and the regulations quoted in the dissenting (now the Court's) opinion having brought about the miserably poor results as we must take here to be true, I am not impressed with the plea that 'the agency is denied the benefit of the policy that it be permitted to discover and correct its own errors.' One cannot but ask: What, in the name of Justice, has prevented the agency from discovering what must have been apparent to everyone at Maxwell Air Force Base all these years? And what, but a conscious intent not to do so has prevented the proper officials from correcting these crass 'errors.'
 
 
 29
 I would excuse any imagined requirement of exhaustion of administrative remedies, if it otherwise existed, on the massive and pervasive violations of the executive order itself. I shall not attempt to elaborate on what was said in the original opinion in the matter of the aborting of the administrative remedies because of the clearly pleaded callous disregard, as to Penn's case, and the explicit incorrect response as to Foster, by the persons whose duty it was 'to seek a resolution of the matter on an informal basis; to counsel the aggrieved person concerning the issues in the matter; to seek a solution of the matter on an informal formal basis,' etc., see 713.213 C.F.R.
 
 
 30
 I conclude only, that if exhaustion is normally required, which I seriously question, then, here there had either been 'exhaustion' or such conduct as would require us to find it to be excused-- not to 'penalize' the EEO counselors for bad performance as suggested by the opinion, but to save a law suit showing on its face so much merit, after all of this time has passed. I am loath to say to Mr. Penn, after his 22 years employment at not exceeding a G.S. Grade 5 and Navy veteran Foster,[3] after his fifteen years of employment at no better than a G.S. Grade 4 that they have no right to maintain this section 1981 suit that has now been pending for two and a half years. In light of the alleged treatment given them I cannot tell them that they are remanded to the system that has, according to the facts alleged, treated them with such callous rejection.[4]
 
 
 31
 I would affirm the order of the trial court.
 
 
 
 [1]
 The order of the District Court, 350 F.Supp. 752 denying the motion to dismiss did not refer to the status of the Alabama State Conference of NAACP, Inc., which joined in the suit as plaintiff alleging that it sued on behalf of its members and of all blacks in Alabama situated similarly to the individual plaintiffs. Pretermitting the numerous other issues that surround NAACP's claim, it now has an administrative remedy under amended regulations adopted shortly after the District Court denied the motion to dismiss, see 5 Cir., 490 F.2d at 712, footnote 3, and under the circumstances of this case it too should be required to exhaust
 
 
 [1]
 This order, in relevant part, reads:
 Section 1. It is the policy of the government of the United States to provide equal opportunity in federal employment for all persons, to prohibit discrimination in employment because of race, color, religion, sex, or national origin, and to promote the full realization of equal employment opportunity through a continuing affirmative program in each executive department and agency . . . 'Section 2. The head of each executive department and agency shall establish and maintain an affirmative program of equal employment opportunity for all civilian employees and applicants for employment within his jurisdiction in accordance with the policy set forth in Section 1. It is the responsibility of each department and agency head, to the maximum extent possible, to provide sufficient resources to administer such a program in a positive and effective manner . . . 'Section 3. The Civil Service Commission shall provide leadership and guidance to departments and agencies in the conduct of equal employment, opportunity programs . . . 'Section 4. The Civil Service Commission shall provide for the prompt, fair, and impartial consideration of all complaints of discrimination in Federal employment on the basis of race, color, religion, sex, or national origin. Agency systems shall provide access to counselling for employees who feel aggrieved and shall encourage the resolution of employee problems on an informal basis. Procedures for the consideration of complaints shall include at least one impartial review within the executive department or agency and shall provide for appeal to the Civil Service Commission . . ..'
 
 
 [2]
 Six blacks out of ninety-one state troopers were hired by Mississippi. The court said: 'These figures alone negate the State's argument that its present practices are non-discriminatory.'
 
 
 [3]
 Foster alleged that while serving in the Procurement Office at Maxwell Air Force Base he received a certificate in accounting from Floyd Commercial Business School
 
 
 [4]
 Of course, I refer only to what is alleged, but by making its motion to dismiss, the government has elected to say 'If everything you allege is true, you cannot sue.'